TAYLOR *against* BRYDEN.

THIS was an action of *assumpsit*, on a *judgment* obtained against the defendant, in the state of *Maryland*, as endorsor of a bill of exchange.

The cause was tried before Mr. Justice *Thompson*, at the last *April* sittings, in *New-York*.

The plaintiff produced in evidence a regularly certified copy of the judgment recovered against the defendant, in *Maryland*, as endorsor of a bill of exchange. The bill of exchange was drawn by *C. F. T. Biske*, on *J. A. & D. H. Rucker*, Esqrs. of *London*, for 230*l.* sterling, at 60 days sight, in favour of *W. B. Magruder*, who endorsed it to the defendant, who endorsed it to the plaintiff. The bill was dated the 23d *July*, 1799; and was noted on the face of it, for non-acceptance, on the 14th *September*, 1799.

It also appeared, by a copy of the protest for non-acceptance, taken from the books of the notary, in *July*, 1804, by another notary, that the bill was regularly protested for non-acceptance, on the 14th *September*, 1799, the notary who made the protest being since dead. It also appeared, by a copy of the protest for non-payment, that it had been regularly protested for non-payment on the 16th *November*, 1799.

It appeared further, from the *record*, that the declaration, first filed by the plaintiff, on the 6th *December*, 1800, was upon the protest for non-payment of the 16th *November*, 1799; and that on the prayer of the plaintiff, a commission to examine witnesses in *London* and *New-Orleans* was issued the 11th *May*, 1802. On the 14th *May*, 1805, the plaintiff, it appeared, prayed leave to amend his declaration, by adding a count on the protest for *non-acceptance*, on the 14th *September*, 1799; which

An action of *assumpsit* was bro't on a judgment obtained against the defendant, in *Maryland*, as endorsor of a bill of exchange, and it appeared that the plaintiff had declared in the suit in *Maryland*, on a protest for *non-payment*, as well as for *non-acceptance* of the bill, and the cause was there tried by a jury, who found for the plaintiff, on which the judgment was rendered: It was held, that the question of reasonable notice or due diligence, was a question compounded of law and fact, and proper to be submitted to a jury, and having once been fairly litigated and decided, it was not again to be investigated in an action brought in this state, on the judgment.

A judgment obtained in another state, is *prima facie* evidence of a just debt; and it is incumbent on the defendant to impeach the justice of it, or to show, by positive proof, that it was irregularly and unfairly obtained.

NEW-YORK, amendment was allowed by the court.    The amended
May, 1811. declaration contained also the count on the protest for
TAYLOR *non-payment.*
v
BRYDEN.        The record contained, also, a deposition taken the 3d
*March,* 1803, at *Baltimore,* which was read in evidence.
It stated that the witness, in the absence of the plaintiff,
received, in *November,* 1799, a letter directed to the plain-
tiff, from his correspondent in *London,* dated 13th *Sept.*
1799, advising that the bill in question had been protested
for *non-acceptance,* of which the witness gave due notice
to the defendant, in *February,* 1800; that immediately
on receipt of the news that the bills were protested for
non-payment, and returned by the brig *John Brockwood,*
from *London,* which was given by a letter from the plain-
tiff's correspondent, dated the 21st *November,* 1799, no-
tice was given to the defendant.    It appeared that the
vessel, called the *John Brockwood,* by which the first of
the set and protests were sent, had been lost and was
believed to have foundered at sea, and the witness stated,
that as soon as it was believed that she was lost, the
plaintiff sent to *London* for the second of the set,
which was received by the plaintiff, in *September,* 1800,
enclosed in a letter, dated the 28th *June,* 1800; that on
receipt of the second of the set, the witness, as agent of
the plaintiff, in his absence, called on the defendant and
demanded payment; but received no satisfactory an-
swer.
    The plaintiff also gave in evidence, the following letter
from the plaintiff to the defendant:
                    " *New-York, October* 1, 1799.
    " Since I wrote you last, I have appointed Mr. *Ray*
as my attorney.    I have given him particular directions
to try to negotiate with you for the amount of the bills
for which you have obtained judgment, and it is my
wish to have the thing settled amicably; and I hope on
your part, you will try to give every indulgence in your

power. It is my particular directions to Mr. *Ray*, the first thing he does, to apply all the funds that is my due for rent, &c. for the discharge of the same."

The defendant then proved, that the mail for the conveyance of letters from the general post-office in *London*, is regularly made up, on the first *Wednesday* in every month, and despatched the same evening, by the government packet, to *New-York;* and that it was the invariable custom of the merchants in *England*, to forward the second of a set of protested bills, by the first opportunity after the first have been sent.

The defendant offered other evidence which was objected to, and rejected by the judge, who charged the jury, that it was not necessary that a *copy* of the protest for non-acceptance should accompany the notice ; and that the question of *due diligence* was a subject on which the jury had a right to decide; but, in his opinion, the plaintiff had shown sufficient to enable him to recover. The jury found a verdict for the plaintiff.

A motion was made to set aside the verdict and for a new trial ; and the following points were raised by the counsel for the defendant.

1. That the defendant did not receive legal notice of the protest for non-acceptance.

2. That the protest for non-acceptance ought to have been forwaded with the notice ; but was not sent till *July*, 1804.

3. That the protest for non-payment ought to have been sent by the first opportunity.

4. That the second of the set of bills ought to have been sent by the next opportunity after forwarding the first.

5. That the letter of the defendant to the plaintiff was conditional, and contained no promise to pay, and was not binding, being written under an ignorance of the defendant's legal rights.

The cause was argued by *Ray* (of *Baltimore*) and *Slosson*, for the defendants; and by *D. B. Ogden* and *Boyd*, for the plaintiff; but from the opinion delivered by the court, it becomes unnecessary to state the arguments of counsel, which turned chiefly on the question of due diligence and notice.

The *defendant's* counsel cited 4 *Term Rep.* 175.  *Kyd,* 136, 137.   1 *Selwyn's N. P.* 357. note 35. 352.   5 *Esp. Rep.* 157.  1 *Term Rep.* 167.  *Buller's N. P.* 271.  2 *Esp. Rep.* 511.   3 *Dallas,* 365. 405.   *Kyd,* 164. 166. 224. 6 *East,* 7.   2 *H. Bl.* 6. 226, 227. 565.   2 *Caines,* 344. *Malyne's Lex Merc.* 2 64.

The *plaintiff's* counsel cited *Chitty on Bills*, 92.  2 *Esp. Cas.* 511.   4 *Esp. Cas.* 48.   3 *Johns. Rep.* 206.   4 *East,* 481.   *Doug. Rep.* 1.   9 *East,* 192.   11 *East,* 118.

KENT, Ch. J. delivered the opinion of the court.   The judgment in *Maryland*, upon which this suit was brought, was rendered against the defendant, as an endorsor of a foreign bill of exchange, and he now contends that he was not chargeable, by reason of the want of due notice of the non-acceptance, and of the non-payment of the bill. Whether notice of the non-acceptance of the bill, without accompanying that notice with the protest for non-acceptance, was competent, under the law of merchants, to charge the party, is a point which we need not now discuss, as the suit in *Maryland* was upon the *protest* for non-payment, as well as for the non-acceptance; and the non-payment, if supported by the requisite notice and proof, was sufficient to sustain the action.   It has been urged to the court that there was not due diligence in giving notice of non-payment, and that the question of diligence is open here for investigation, notwithstanding the trial and judgment in the other state.   But we are by no means satisfied that such an inquiry ought now to

be pursued, after the question has been once fairly liti-
gated and decided. ┴The question of reasonable notice
is a compound of law and fact, to be submitted to a jury.
(6 *East*, 3. and 14. *in notis*.  1 *Sch. & Lefroy*, 461.  1
*Campb.* 248.)  The judgment in *Maryland* is presump-
tive evidence of a just demand ; and it was incumbent
upon the defendant, if he would obstruct the execution
of the judgment here, to show, by positive proof, that it
was irregularly or unduly obtained.  We do not know
the whole amount of the evidence that may have been
given upon the trial in *Maryland*.  The record contains
a deposition, but does not state whether any, or what
additional proof was given.  To try over again, as
of course, every matter of fact which had been duly
decided by a competent tribunal, would be disre-
garding the comity which we justly owe to the courts of
other states, and would be carrying the doctrine of re-
examination to an oppressive extent.  It would be the
same as granting a new trial in every case, and upon
every question of fact.  Suppose a recovery in ano-
ther state, or in any foreign court, in an action for a
*tort*, as for an assault and battery, false imprisonment,
slander, &c. and the defendant was duly summoned and
appeared, and made his defence, and the trial was con-
ducted orderly and impartially, according to the rules of a
civilized jurisprudence, is every such case to be tried
again here upon the merits ? *I much doubt whether the*
rule can ever go this length.  The general language of the
books is, that the defendant must *impeach* the judgment,
by showing, affirmatively, that it was unjust, by being ir-
regularly or unfairly procured.

In the case of *Hitchcock & Fitch* v. *Aickin*, (1 *Caines*, 460.)
this court went no further than to decide the general princi-
ple, that a judgment of another state was not conclusive,
but was to be placed upon the footing of a foreign judgment
under the *English* law.  'l he question then is, how far, and
to what extent, do the *English* courts permit foreign

NEW-YORK, judgments to be opened, to let in a re-examination of
May, 1811. the merits. The case of *Sinclair* v. *Fraser*, contains the
TAYLOR rule of the *English* courts. It was decided by the house
v.
BRYDEN. of lords, on the 4th of *March*, 1771, upon an appeal from
the court of *sessions* in *Scotland*. (Cited by Mr. *Wed-
derburne*, the solicitor-general, in the case of the *Dutchess
of Kingston*, 11 *State Tr*. 222.) A suit was brought
upon a judgment in *Jamaica;* and the question was,
what should be the effect of the judgment ; and the court
of *sessions* refused to give any effect to it, and held the
party bound to prove the ground, the nature and the ex-
tent of his demand. But upon appeal to the house of
lords, the judgment of the court of *sessions* was reversed,
and the rule of law was stated in the judgment of re-
versal; " that the judgment of the court of *Jamaica*
ought to be received, as evidence, *prima facie*, of the
debt; and that it lies on the defendant to impeach the
*justice* of it, or to show that it was *irregularly* and *un-
duly* obtained." This decision was cited in *Galbraith* v.
*Neville*, (K. B. 29 *Geo.* III. *Doug. Rep*. 3d edit. p. 5.
note,) and Mr. Justice *Buller* said, that it had always
been considered as establishing the true rule.

In the present case, the defendant has certainly not suc-
ceeded in impeaching the judgment. He has, at most,
only excited doubts, under the obscure, and, perhaps,
very imperfect testimony before us, as to the fact of due
diligence in giving notice of the protest for non-payment.
And where the party has once litigated his case, before
a competent jurisdiction, and when no fraud or unfair-
ness is pretended, every doubt and every presumption
arising on a matter *in pais* ought to be turned against
him. We may, with propriety, adopt the observation
of Lord *Kenyon*, in the case of *Galbraith* v. *Neville*, as
stated in a note to 5 *East*, 475. that " without entering
into the question how far a foreign judgment was im-
peachable, it was, at all events, clear, that it was *prima
facie* evidence of the debt, and that no evidence had

been adduced to impeach this." The motion on the part of the defendant, for a new trial, is therefore denied.

Motion denied.