This is an action upon a judgment recovered in the Court of Common Pleas of Upper Canada against this defendant by this plaintiff. The cause was tried before a referee, who gave judgment for the plaintiff and judgment on his report to be affirmed at general term.
On the trial the plaintiff offered in evidence an exemplication of the record of a judgment in the Court of Common Pleas of Upper Canada, which was received under objection and exception. Numerous interlineations, alterations and erasures, appeared in the record, but they all appeared to be marked or authenticated by the initials "L.H.," being the initials of the name of the clerk, and said initials appeared to be in the same handwriting as that of the signature of said clerk. The defendant's counsel objected to the introduction of said papers on the ground.
1st. That this government does not recognize the province named in the record, as one of the independent powers of the world, and that it was not such in fact; and that the evidence of the authority of the officers acting, must come from the government creating them.
2d. That the paper is not authenticated in the manner required by law. *Page 148 
3d. It is nowhere certified to have been compared with the original and to be a true transcript, c., as required by law.
4th. It bears evidence upon its face of numerous erasures, alterations and interlineations, and it is averred that they all appear to have been made since its authentication.
5th. The facts sought to be proved by the paper offered, can be proved only by such testimony as is recognized and received in the courts of common law.
6th. If the record shows anything it is the recovery of a judgment November 19, 1855, whereas the complaint counts on a judgment rendered September 26, 1856, and the variance is fatal. These objections were overruled and the defendant excepted.
I shall consider them in the order above enumerated. I do not read our statute in reference to the exemplification of the records and judicial proceedings in any court in any foreign country as confining the admission of the records only of such foreign country as shall have been acknowledged by this government as one of the independent powers of the world, and with which we have diplomatic intercourse. I think the obvious meaning of the statute is to admit the records of any court of any foreign country, and it is quite immaterial whether such foreign country is one of the great powers of the world, or one of minor importance and having a circumscribed extent. The size of the country cannot alter the rule of evidence, and the records of a court of the Republic of San Marino are of equal validity as those of the Empire of all the Russias. The only question is, does the record come from a court of a foreign country? If so, and it is properly authenticated, it is to be admitted as evidence under the provisions of our Revised Statutes. (3 R.S., 5th ed., p. 678, § 26.) The court will take judicial notice that the Province of Upper Canada is a foreign country, and forms no part of our own (Ennis v. Smith, 14 How., 430): that it has a government and courts, and that those courts proceed according to the course of the common law. The record produced was, therefore, the record of a court of a foreign country, and it is *Page 149 
authenticated by the attestation of the clerk of the court, with the seal of the court annexed. There is also attached the certificate of the chief justice of the court, that the person attesting such record, is the clerk of the court, and that the signature of such clerk is genuine. These papers are further authenticated by the certificate of the assistant secretary of state of said province, and by the governor in chief of said province, having charge of the great seal of said province, and which fact is attested by the affixing the great seal to said certificate, and which of itself imports verity, under the authority of which government said court is held, and which certificate declares that such court is lawfully and duly constituted, and specifies the general nature of its jurisdiction, and it also verifies the signature of the clerk of such court, and the signature of the chief justice thereof. It seems to me, therefore, that all the provisions of the statute have been complied with, to authorize the reading of this record in evidence in any court of this state. The referee, therefore, properly admitted it to be read. If I am correct in these views they dispose of the first and second objections of the defendant's counsel.
The third objection is based upon the assumption that it was offered in evidence, as a copy of the record of a court of a foreign country, under section 27, 3 R.S., 678, 5th ed. This is a mistake. It was an exemplification of such record under the 26th section, and offered and received and authenticated as such. The provisions of section 27 had therefore no application to the case, and were properly disregarded. The assumption in the fourth objection, that it appears by the record that the erasures, alterations and interlineations, made therein, were made since its authentication, is not sustained by any proof in the case, and certainly not from anything which I have been able to discover as appearing on the face of the record. Those alterations seem to be verified by the initials of the clerk, and it is to be presumed they were made by him at the time he authenticated the roll. In reference to the acts of such officers, the maxim of omne rite esse acta, is to be applied, *Page 150 
and fraud and falsehood are not to be assumed without some evidence to warrant the assumption. There is nothing on the face of these alterations which would lead any one to doubt but that they were made in good faith and in accordance with the truth, by the proper officer and at the appropriate time. The fifth objection is answered by the provisions of the statute. They declare that a record thus authenticated may be admitted as evidence, and when so admitted it becomes legal evidence of the facts set forth in the record. The legal effect of such evidence will be hereafter considered.
The sixth objection is wholly groundless. The exemplification states that the enrollment of the judgment was on the 26th day of September, 1856, in the court of Common Pleas, and at the foot of the judgment roll it appears to have been signed on that day. It was properly, therefore, averred in the complaint, that the judgment was recovered on that day in that court, and there was not, therefore, any variance between the day laid in the complaint or that upon which it was recovered, and that appearing by the record itself. The variance between the allegation and the pleading, if it had been of the character assumed by the objection, could not have been material, and it could not have misled the defendant, and might have been disregarded. If the party had been misled, he could have satisfied the court thereof, and then the pleading could have been amended in conformity with section 169 of the Code. But it was competent for the Supreme Court at any time under section 173 to have amended the pleading by making it conform to the facts proven, when in this instance it was but correcting a mistake in a date, and this court on appeal will assume the amendment to have been made. There is nothing in this objection in any point of view in which it may be regarded.
There remains to be considered the question whether the judgment in the court of a foreign country, duly proven, is conclusive between the parties, when there has been a trial upon the merits, and there is no fraud or want of jurisdiction, or mistake shown or offered to be shown. In other words, *Page 151 
whether the merits of the case are to be retried in another tribunal in another action between the same parties.
Section 28 of volume 3, Revised Statutes, 678, 5th ed., declares that the provisions of sections 26 and 27, in reference to the manner of proving judgments recovered in the courts of foreign countries, shall not be construed as declaring the effect of any record or judicial proceeding authenticated as therein prescribed. Much discussion and not a little contrariety of decision has obtained in England and in this country as to the conclusiveness of a judgment obtained in a foreign country, when sued upon in the courts of England or of this country. The rule may now be regarded as firmly settled in England, that the judgment is conclusive, so far as to preclude a retrial upon the merits. It remains competent for the defendant to show that the foreign court had not jurisdiction of the subject matter of the suit, or that the defendant was never served with process or that the judgment was fraudulently obtained. (Henderson v.Henderson, 6 C.B., 288; Ferguson v. Mahen, 11 Ad. Ellis, 179; Ricardo v. Garcias, 12 Clark Fin., 368; Bank ofAustralia v. Nias, 4 Eng. Law Eq., 252.)
The same rule was early enunciated in this state by Chief Justice KENT in Taylor v. Boyden (8 John., 173). He there says: "To try over again, as of course, every matter of fact which had been duly decided by a competent tribunal, would be disregarding the comity which we justly owe to the courts of other states and would be carrying the doctrine of re-examination to an oppressive extent. It would be the same as granting a new trial in every case, and upon every question of fact. Suppose a recovery in another state or in any foreign court in an action for a tort, as for an assault and battery, false imprisonment, slander, c., and the defendant was duly summoned and appeared and made his defence, and the trial was conducted orderly and impartially, according to the rules of a civilized jurisprudence, is every such case to be tried again here upon the merits? I much doubt whether the rule can ever go to this length. The general language of the books is *Page 152 
that the defendant must impeach the judgment by showing affirmatively that it was unjust, by being irregularly or unfairly procured."
In Monroe v. Douglas (4 Sand. Ch. R., 126), a very elaborate and learned review is taken of the cases as to the conclusiveness in our courts of the judgments of the courts of other countries, and it is declared by that learned and eminent judge, Vice-Chancellor SANDFORD, that when the foreign judgment is produced in evidence and appears to be regular in form and to contain the essential facts of an adjudication of the controversy made between proper parties, the burden of showing its invalidity rests upon the party who desires to impeach it, and he can only show in contesting its validity, that it was procured by fraud, or that it is void on its face, or void by the local law, forirei judicatœ. Mr. Justice STORY reasons strongly in favor of the doctrine of the absolute conclusiveness of foreign judgments (Conflict of Laws, § 607), and holds that this is the more convenient and the safest rule and the more consistent with sound principle, except in cases in which the court, which pronounced the judgment had not due jurisdiction of the case and of the defendant, or the proceeding was in fraud or founded in palpable mistake or irregularity or bad by the law of rei judicatœ in all such cases he says, the justice of the judgment ought to be impeached.
In Cummings v. Banks (2 Barb., 601), EDWARDS, J., in delivering the opinion of the court, says, his inclination is to side with Judge STORY; and Vice-Chancellor SHADWELL, in Martin
v. Nichols (3 Simmons, 458), and indeed the English courts generally hold the foreign judgment conclusive, except, of course, for fraud, mistake or want of jurisdiction, and he thinks that the better opinion in this country as well as in England. The same doctrine has been laid down by the Supreme Court of Ohio in the case of Silver Lake Bank v. Harding (5 Ham., 545). But in Vermont the rule has been stated, as contended for by the defendant's counsel. There CHIPMAN, Ch. J., in King v. Gilder
(1 D. Chip., 59), held that if the defendant in an action on a foreign judgment produced *Page 153 
evidence to raise a presumption that the plaintiff's original claim was groundless, this will put the plaintiff to prove his demand de novo, and the trial would then be had as if no judgment had been previously rendered. I find no authority for such a doctrine in this state, and it seems to me to be in hostility to our own cases and the better rule as enunciated by able text writers and learned judges.
The views suggested by Judge STORY seem to be eminently correct, and most in harmony with sound principle and the best considered cases. He very truly says that it would be difficult to perceive what could be done if a different doctrine were maintainable to the full extent of opening all the evidence and merits of the case anew in a suit upon the foreign judgment. He inquires "in a case of covenant or of debt, or of a breach of contract, are all the circumstances to be re-examined anew? If they are by what laws and rules of evidence and principles of justice, is the validity of the original judgment to be tried? Is the court to open the judgment and to proceed ex æquo et bono?
Or is it to administer strict law and stand to the doctrines of local administration of justice? Is it to act upon the rules of evidence acknowledged in its own jurisprudence, or upon those of the foreign jurisprudence? These and many more questions might be put to show the intrinsic difficulties of the subject." Holding that the judgment was only to be regarded as prima facie
evidence for the plaintiff, he correctly says would be a mere delusion if the defendant might still question it by opening all or any of the original merits on his side, for under such circumstances it would be equivalent to granting a new trial. He concedes that the defendant ought to be permitted to show that the court had no jurisdiction, or that he never had any notice of the suit, or that it was procured by fraud, or upon its face it was founded in mistake, or that it is irregular and bad by the local law. Beyond this, he insists, the right to impugn the judgment, is in legal effect the right to retry the merits of the original cause at large, and compel the plaintiff to establish again those merits and his rights to a recovery. *Page 154 
At the last term of this court in the case of Rocco v.Hackett, we held a judgment recovered in Massachusetts, when the court there had acquired by the laws of that state jurisdiction of the party, in a suit upon that judgment in the courts of this state, conclusive upon the parties, and that the merits of the controversy could not be retried here in such action. We think the rule adopted in England, holding the same doctrines as to foreign judgments and recognized in this state, should be adopted and adhered to here, in respect to such foreign judgments, and that the same principles and decisions which we have made as to judgments from the courts of other states of the Union, should be applied to foreign judgments. The judgment should therefore be affirmed, with costs.
All the judges concurring,
Judgment affirmed.