COULBORN *et al. v.* JOSEPH.

No. 14511.   April 14, 1943.

*Mitchell & Mitchell,* for plaintiffs in error.

*MacDougald, Troutman & Arkwright, Dudley Cook,* and *Sidney M. Wittner,* contra.

GRICE, Justice. ■ The case is here on general demurrer. It presents for the first time the question as to the effect, if any, to be given by the courts of this State to the judgments and decrees of a court of a foreign country. More specifically the problem is this: May a decree of an English court, rendered when both parties were citizens of that realm, which adjudges that the defendant therein

is liable to the plaintiff in a given sum of money, be made the sole basis of relief sought here by the same plaintiff against the same defendant, so far as it establishes the fact of indebtedness between the parties? This record does not invoke any issue as to fraud, or lack of jurisdiction in the foreign court, either as to subject matter or parties. Is the English judgment conclusive here?

The solution of the controversy raised by this writ of error can not be settled by a reference to those cases dealing with judgments of other States of the American Union, because as to these the full faith and credit clause of the constitution of the United States governs, and such adjudications of necessity were made with respect to the constitutional provision on that subject in art. 4, section 1, thereof. There was in this class of cases no necessity for determining whether in the absence of such a provision in our organic law the judgments of the courts of one State would be given effect in the courts of another upon the application of the principles hereinafter examined. Between certain countries this matter has been made the subject-matter of treaties; but apparently there is no treaty between this country and the United Kingdom. As was said by Mr. Justice Gray, in Hilton v. Guyot, 159 U. S. 113, 163 (16 Sup. Ct. 139, 40 L. ed. 95): "The most certain guide, no doubt, for the decision of such questions is a treaty or a statute of this country. But when, as is the case here, there is no written law upon the subject, the duty still rests upon the judicial tribunals of ascertaining and declaring what the law is, whenever it becomes necessary to do so, in order to determine the rights of parties to suits regularly brought before them. In doing this, the courts must obtain such aid as they can from judicial decisions, from the works of jurists and commentators, and from the acts and usages of civilized nations. Fremont v. United States, 17 How. 542, 557 [15 L. ed. 241]; The Scotia, 14 Wall. 170, 188 [20 L. ed. 822]; Respublica v. De Longchamps, 1 Dall. 111, 116 [1 L. ed. 59]; Moultrie v. Hunt, 23 N. Y. 394, 396."

There have arisen two different lines of authority on this question. At first the prevailing opinion was that the courts of this country would give binding effect only to judgments of the courts of such foreign countries as recognized the conclusiveness of our own judgments. The basis of these decisions was comity, or courtesy, based on reciprocity. This view was presented in Hilton v.

Guyot, supra; Ritchie *v.* McMullen, 159 U. S. 235 (16 Sup. Ct. 171, 40 L. ed. 133). See 31 Am. Jur. § 546, 46 A. L. R. 452, and cit. In Hilton *v.* Guyot, supra, it was ruled that a judgment rendered in France was only prima facie evidence of the justice of the plaintiff's claim, since by the laws of France judgments of other countries are reviewable on the merits. Many other courts have followed the same rule. See notes in·1 Am. D. 324, 20 L.R.A. 675, 91 Am. St. R. 539. In Ritchie *v.* McMullen, supra, the Supreme Court of the United States held that a judgment rendered by a court having jurisdiction of the cause and of the parties, upon regular proceedings and due notice or appearance, and not procured by fraud, in a foreign country, by the law of which, as in England and in Canada, a judgment of one of our own courts, under like circumstances, is held conclusive of the merits, is conclusive as between the parties in an action brought upon it in this country, as to all matters pleaded and which might have been tried in the foreign court.

The judgments in the record before us were rendered by the courts of England; and the case last cited is squarely in point, unless it can be distinguished from the instant case for reasons referred to hereafter in the second division of this opinion. The two rulings of the Supreme Court of the United States clearly bring out the distinction recognized by that court, to wit: As to a judgment rendered by a court of a country where our judgments are treated as only prima facie evidence of the plaintiff's right to recover, our court will not recognize it as conclusive, but as only prima facie correct; but as to one rendered by a court of a country where our judgments are treated as conclusive, we will treat theirs as conclusive.

The doctrine of reciprocity has met with much criticism. After referring to the rule, the author of Freeman on Judgments (vol. 3, § 1494) says: "But elsewhere this view has not met with favor, since the mere fact that the country whose judgment is in question would refuse to accord conclusive effect to the judgments of other countries affords no sound basis for denying such effect to its judgments, in the absence of other circumstances furnishing more rational grounds for such action. And it is safe to say that in view of the tendency to accord full faith and credit to all foreign judgments and to place them on the same basis as sister state judg-

ments, many courts would refuse to countenance the doctrine of reciprocity." In Fisher *v.* Fielding, cited infra, rejecting the rule of reciprocity, the court observed that the object sought by the application of the principle of reciprocity "seems more political than judicial; it is not so much to administer justice in the case on trial as to compel other nations to administer justice in other cases. It may be doubted whether the accomplishment of such an object by such means fairly comes within the province of a court. Reciprocity is not a principle to be weighed in the scales of justice; it is rather a weapon to be wielded by the executive." Freeman, in § 1493 of the same volume of his work cited above, states that "No prediction in regard to future decisions is more likely to be realized than that our courts will in time place foreign judgments on the same footing which they now occupy in the mother country."

The courts of England have frequently held that an action brought in that country on a foreign judgment can not be defeated by an examination into the merits of such judgment; and these rulings have been made without reference to the doctrine of comity or reciprocity. See the authorities cited in the note in 94 Am. St. R. 539. In that excellent and comprehensive annotation the editor says: "It was inevitable that the considerations influencing the adjudications of the English courts would make themselves felt in America. Indeed the two great American jurists, Judges Kent and Story, at an early day advanced most satisfactory reasons in favor of the conclusiveness of foreign judgments. The latter in his Conflict of Laws, section 607, ably pointed out the difficulties involved in the law of foreign judgments, as it was then understood. The former, in pronouncing judgment in the year 1811, in the case of Taylor *v.* Boyden, 8 Johns. 173, said: 'To try over again as of course every matter of fact which had been duly decided by a competent tribunal would be disregarding the comity which we justly owe to the courts of other States, and would be carrying the doctrine of re-examination to an oppressive extent. It would be the same as granting a new trial in every case and upon every question of fact. Suppose a recovery in another State, or in any foreign court, in an action for tort, as for an assault and battery, false imprisonment, slander, etc., and the defendant was duly summoned and appeared and made his defense, and the trial

was conducted orderly and properly, according to the rules of a civilized jurisprudence, is every such case to be tried again here on the merits? I much doubt whether the rule can ever go to this length. The general language of the books is, that the defendant must impeach the judgment by showing affirmatively that it was unjust, by being irregularly or unfairly procured.'" Then follows on that and the following page a list of the cases holding that foreign judgments are conclusive. For other authorities so holding see MacDonald v. Grand Trunk Ry. Co., 71 N. H. 448 (52 Atl. 982, 59 L. R. A. 448, 93 Am. St. R. 550).

The grounds stated by Chancellor Kent in Taylor v. Boyden, supra, largely outweigh, it seems to us, any considerations of mere comity. With respect to a highly civilized country such as England, the home of the common law, whence originated magna charta, and where was developed and where there has always been recognized those great principles of right and justice that form the warp and woof of our own system of jurisprudence, the language in Fisher v. Fielding, 67 Conn. 91, 110 (34 Atl. 714, 32 L. R. A. 236, 52 Am. R. 270), which was quoted approvingly in MacDonald v. Grand Trunk R. Co., supra, seems fitting: "The maxim, *interest reipublicæ ut sit finis lilium,* is not restricted in its application to controversies or suits originating in the State before whose courts it is invoked. It does not rest on the excellence of any particular system of jurisprudence. It governs wherever the parties come, in the last resort, before a court constituted under an orderly establishment of legal procedure. No one who has been, or could have been, heard upon a disputed claim, in a cause to which he was duly made a party, pending before a competent judicial tribunal having jurisdiction over him, proceeding in due course of justice, and not misled by the fraud of the other party, should be allowed, after a final judgment has been pronounced, to renew the contest in another country. The object of courts is hardly less to put an end to controversies than to decide them justly."

The facts of this record would probably justify us in placing on the ground of comity the ruling that the English judgment is conclusive, and also perhaps as to at least one of the judgments involved our decision might be supported by the fact that it was consented to by the defendant therein; but we prefer to place it

on what we consider the more convenient and the safest rule, and the one more consistent with sound principle, to wit: The issues having been submitted and adjudicated in an apparently regular manner to a court of competent jurisdiction of a foreign country whose laws and judicial system are not only not inconsistent with, but in harmony with, those fundamental concepts of justice under the law to which we in this country are accustomed, the judgments there rendered will be by the courts of this State held to be conclusive, and rights thereunder accruing will be enforced by the courts of this State.

■ One other contention of the plaintiffs in error remains to be considered. The point is made that the English judgments which are here shown appear not to be final judgments, and for that reason it was erroneous to refuse to sustain the general demurrer to the petition. The theory upon which this contention rests is, that generally judgments for alimony are subject to revision or modification. The insistence can not be sustained. Only one of the judgments was for alimony, or, as therein stated, for "maintenance," and as to that only the amount already accrued is being sought here. It is a chose in action and constitutes a debt, and an action can be sustained upon it. *Roberts* v. *Roberts,* 174 *Ga.* 645 (163 S. E. 735). See also 27 C. J. S. 1279-1280, § 328, and cases cited in the notes. Whether or not a judgment rendered in the alimony case for maintenance was subject to revision by the English court, and therefore not final, need not trouble us; for, as stated above, it is sought to be enforced here only in so far as the payments provided for thereunder have already accrued. That these authorities dealt with judgments rendered by courts of other American States, instead of by those of a foreign country, is not sufficient to differentiate them on principle.

■ The petition set forth grounds for relief, and the general demurrer was properly overruled.

*Judgment affirmed. All the Justices concur.*