A89A1703. KNOTHE v. ROSE.

(392 SE2d 570)

McMURRAY, Presiding Judge.

Plaintiff Knothe, a German citizen, and defendant Rose, a British national, were married in the Federal Republic of Germany (West Germany) on June 1, 1973, and, except for a period of time in 1976, the family lived in West Germany until 1981, when a divorce action was commenced in a West German court. The judgment in the divorce proceeding awarded custody of the couple's two daughters to plaintiff, and defendant was required to pay child support of 555 Deutsche Marks per month. In 1984 the defendant was transferred to the United States by his employer.

On November 12, 1986, plaintiff brought an action in the Amtsgericht Dortmund, a district court in West Germany, seeking modification of child support. Service was attempted upon defendant by mail in February of 1987, but defendant refused to acknowledge service. The documents were returned to the West German Consulate General's office in Atlanta along with a request that any future service include an English translation of the documents.

Subsequently, the documents were served upon defendant by a United States Marshal on July 17, 1987. These documents had been translated into English. Defendant responded by writing the West German court that he could not appear in West Germany for that action because he was unemployed. The West German court acquired information as to defendant's salary with his former employer and based on that amount, proceeded to enter a judgment on March 17, 1988, increasing defendant's child support obligation to 905 Deutsche Marks per month, retroactive to November of 1986.

On May 2, 1988, plaintiff filed a complaint in the Superior Court of Douglas County seeking to domesticate the West German judgment. Plaintiff moved for summary judgment in toto or for partial summary judgment. The superior court denied plaintiff's motion concluding that the West German court lacked personal jurisdiction over defendant and that the West German decree cannot be enforced because the child support modification order is retroactive. We granted plaintiff's application for interlocutory appeal and now she appeals the failure of the superior court to enter an order under OCGA § 9-

11-56 (d) simplifying and narrowing the issues for trial, particularly insofar as the superior court failed to find that the West German child support decree should be enforced. *Held*:

While the full faith and credit clause does not apply to judgments and decrees of foreign countries, we may nonetheless recognize and enforce foreign judgments by application of the doctrine of "comity." "In *Ritchie v. McMullen*, [159 U. S. 235 (16 SC 171, 40 LE 133)] the Supreme Court of the United States held that a judgment rendered by a court having jurisdiction of the cause and of the parties, upon regular proceedings and due notice or appearance, and not procured by fraud, in a foreign country, by the law of which, . . ., a judgment of one of our own courts, under like circumstances, is held conclusive of the merits, is conclusive as between the parties in an action brought upon it in this country, as to all matters pleaded and which might have been tried in the foreign court." *Coulborn v. Joseph*, 195 Ga. 723, 730 (25 SE2d 576). It is also required that the foreign judgment be grounded on those fundamental concepts of justice to which we are accustomed. See id at 733. Defendant contends that the West German judgment at issue fails to satisfy these criteria in several respects.

Defendant contends that the West German judgment violates Georgia public policy. In examining such a contention, we are not so concerned with whether the rule applied by the foreign court is precisely the same as under Georgia law, as we are primarily concerned with whether the foreign rule is consistent with or repugnant to our underlying goals, values, and objectives. See *Yates v. Lowe*, 179 Ga. App. 888, 889 (348 SE2d 113) and *Karimi v. Crowley*, 172 Ga. App. 761, 762 (324 SE2d 583). Additionally, to the extent that a generally enforceable foreign judgment is, as to some ancilliary issue, contrary to Georgia policy, it may be modified after domestication but before enforcement, by the Georgia court. *Blue v. Blue*, 243 Ga. 22 (252 SE2d 452).

Defendant contends that Georgia public policy is violated since the increase in child support is awarded retroactively. While it is true that modifications of child support operate only prospectively in Georgia, we must also consider our provision for temporary modification of child support under OCGA § 19-6-19 (c). We cannot say that the effect of a retroactive award is significantly different from a temporary modification under our statute since both provide an increased level of support for the period while the proceeding for modification is pending. Even in the absence of our statutory provision for temporary modification, the West German judgment which is retroactive only to the time that the proceeding for modification was initiated does not offend our fundamental values.

Defendant's contention that the West German judgment violates

Georgia public policy by involuntarily imposing child support until the children have completed college, or in other words, beyond the age of 18 years at which child support terminates under Georgia law by virtue of OCGA § 19-7-2, is not supported by the record. Both of the children in the case sub judice are younger than 18 years of age. The West German judgment merely provides for the commencement of an increased level of child support payments and does not specify the date of termination of the child support payments. Nor is there any evidence concerning a statutory termination date under West German law. Thus, the issue of when the child support payments will be terminated remains for determination. The issues raised by this contention are not ripe for review.

Defendant acknowledges that the Georgia Foreign Money Judgments Recognition Act, OCGA § 9-12-110 et seq., does not govern the case sub judice since it does not apply to "a judgment for support in matrimonial or family matters." OCGA § 9-12-111 (1). Nonetheless, defendant contends that this statute provides persuasive grounds to refuse recognition of this West German judgment particularly insofar as it conditions enforcement of the foreign judgment upon a showing that the West German courts would recognize and enforce similar judgments from Georgia courts. While we fail to see the relevance of OCGA § 9-12-110 et seq. to this case, it is true that reciprocity lies at the heart of the doctrine of comity. Contrary to defendant's assertion, plaintiff's evidence sufficiently establishes that West Germany recognizes and enforces foreign judgments, including those modifying child support payments, subject to conditions substantially similar to those we impose under *Coulborn v. Joseph*, 195 Ga. 723, supra. We find no merit in defendant's suggestion that plaintiff's evidence is deficient because it refers to foreign judgments (in relation to West Germany) in general and fails to specifically state that judgments of Georgia or the United States would be enforced in West Germany.

The West German court's exercise of jurisdiction over defendant was consonant with our due process notions of fair play and substantial justice. Defendant's marriage, maintenance of a matrimonial domicile, divorce, continued residence after divorce, and continuing obligations to his two daughters who continued to reside there, establish defendant's minimum contacts with West Germany such that plaintiff's maintenance of her action there does not offend our notions of due process. *Smith v. Smith*, 254 Ga. 450 (330 SE2d 706).

Nor is there any merit in defendant's contention that he was not afforded adequate notice and a reasonable opportunity to be heard in West Germany. Defendant received the complaint in the West German action and the summons of the West German court but failed to properly respond. We cannot criticize the West German court's failure to excuse defendant, on the basis of his letter pleading his dire

financial circumstances at that time, as undoubtedly no court in Georgia would view such a letter as a proper response to a summons either. As he failed to respond properly to the complaint and summons, defendant has no grounds upon which to complain of any lack of further notice.

Contrary to defendant's assertion, plaintiff's motion for summary judgment requested in the alternative for "an order granting partial summary judgment, and limiting the issues for trial." On appeal the failure to grant a partial summary judgment is enumerated as error. Consequently, this is not a case where plaintiff's entitlement to partial summary judgment is not properly raised. Compare *Butts v. Ga. Cas. &c. Co.*, 179 Ga. App. 819, 820-822 (348 SE2d 94). While a lower court should enter an order pursuant to OCGA § 9-11-56 (d) only where "practicable" (*Intl. Indem. Co. v. Odom*, 174 Ga. App. 6, 8 (329 SE2d 307)), the entry of such an order is entirely practicable in the case sub judice. In failing to rule, that the West German judgment be domesticated and is enforceable as to its terms, the superior court abused its discretion. The West German judgment should be made the judgment of the superior court. *Edmonds v. Bates*, 178 Ga. App. 69, 73 (342 SE2d 476).

*Judgment reversed. Carley, C. J., and Beasley, J., concur.*

DECIDED MARCH 16, 1990.

*King, Morriss, Talansky & Witcher, Joseph H. King, Jr.,* for appellant.

*Drew, Eckl & Farnham, Benny C. Priest,* for appellee.