71124. EDMONDS v. BATES et al.
71232. BATES v. EDMONDS.
(342 SE2d 476)

BEASLEY, Judge.

The three doctors who were sued in this medical malpractice action moved for summary judgment. It was granted to Drs. Lipsius and Simone and denied to Dr. Bates, all on the ground of the statute of limitations. OCGA § 9-3-71. Edmonds, the patient, appeals from the judgment granted, and Dr. Bates appeals from the judgment denied.

To entitle defendants to summary judgment, " 'undisputed facts as disclosed by the pleadings and evidence must negate at least one essential element entitling plaintiff to recovery and *under every theory fairly drawn from the pleadings and evidence* (cits.) and if necessary, prove the negative or nonexistence of an essential element affirmatively asserted by the plaintiff. [Cit.]' " *Waller v. Transworld Imports*, 155 Ga. App. 438, 439 (271 SE2d 1) (1980). All evidence most favorable to plaintiff's position, including his own testimony, will be taken as true. *Jordan v. Atlanta Neighborhood Housing Svc.*, 171 Ga. App. 467, 468 (320 SE2d 215) (1984); *Pugh v. Frank Jackson Lincoln-Mercury*, 165 Ga. App. 292 (300 SE2d 227) (1983). In considering summary judgment, the court is limited to determining whether there is a genuine issue regarding a material fact; if so, summary judgment must be denied. OCGA § 9-11-56. That, then, is how we must view the case.

The record shows without dispute that Edmonds was first treated

by Dr. Bates for heart problems in February 1981 and, after surgery and release and then subsequent hospitalization in February 1982, was released on February 13 and last seen by Dr. Bates on May 7, 1982. Sometime during or after the second hospitalization, Dr. Bates informed Edmonds of his prognosis that Edmonds had only a short time to live and that medical management was his only alternative because he could not survive further medical treatment or surgery. Cardiologist Simone was first consulted about Edmonds' condition in March 1981 and last saw him during the second hospitalization on February 11, 1982. Dr. Simone likewise advised Edmonds that further corrective surgery was not feasible and that medication was the only available treatment. Dr. Lipsius, who was first consulted in November 1981, last saw Edmonds on January 26, 1982. While under his care, Dr. Lipsius gave Edmonds his diagnosis that Edmonds' problems were psychological and not physical. When Edmonds was released from the hospital in February 1984, he was to return in six weeks but he did not do so. In April or May he consulted with other physicians and was informed that surgery was in fact possible and strongly recommended. It was subsequently performed.

It was not until March 1, 1984, that Edmonds filed suit against the three physicians, alleging that their negligent treatment and advice and diagnosis resulted in business losses, financial strain, "unnecessary treatment . . . which exacerbated his condition and may have shortened his life," and pain and suffering. He also sought punitive damages based on wanton and wilful conduct.

In countering the motions for summary judgment on the ground of the expiration of the statute of limitation, plaintiff maintains that it did not begin to run until May 1982 when he first discovered the negligence, so that his March 1984 filing was well within the two years allowed by OCGA § 9-3-71.[1] The trouble with his position is that it defies the plain meaning of the statute. We had pointed out in 1981, in chronicling the history of the medical malpractice statute of limitations, that "the legislature has changed the date the time begins to run from the date of discovery to the date of breach." *Hart v. Eldridge*, 158 Ga. App. 834, 836 (282 SE2d 369) (1981). Although the decision was disapproved as to another question in *Allrid v. Emory Univ.*, 249 Ga. 35, 37 (285 SE2d 521) (1982), that point remained intact. In applying the statute to run from the date of the allegedly negligent occurrence, the Supreme Court recognized that "it has the effect, in many cases, of cutting off rights before there is any knowl-

---

[1] The substantive revision of OCGA § 9-3-71 which became effective July 1, 1985 does not apply to this case. Section 3 of that Act, not codified by the General Assembly, provided that: "No action for medical malpractice which, prior to July 1, 1985, has been barred by the provisions of Title 9, relating to actions, shall be revived by this Act." Ga. L. 1985, p. 556.

edge of injury. Nonetheless, the legislature has the power, within constitutional limitations, to make such provisions."[2] It likewise applies here. Accord *Johnson v. Gamwell*, 165 Ga. App. 425 (301 SE2d 492) (1983); see also *Lumbermen's Mut. Cas Co. v. Patillo Constr. Co.*, 254 Ga. 461, 464, fn. 6 (330 SE2d 344) (1985).

## Case No. 71124

As to Drs. Lipsius and Simone, there is no evidence, nor can a reasonable inference be drawn, to support plaintiff's argument that he remained under the defendants' care until May 1982, when he became aware of their alleged negligence. He admitted not having seen or spoken with them for months prior to that time. All of the evidence is that the latest possible dates on which the alleged negligent misdiagnosis and negligent course of treatment could have occurred are January 26 and February 11, 1982, the dates Edmonds was last seen by Drs. Lipsius and Simone respectively. He admits that he received no actual medical treatment or diagnosis from either of them beyond these times. His claimed reliance on their opinions during this subsequent period until he sought and obtained other contrary opinion does not constitute treatment or care by the physicians, as defined by OCGA § 9-3-70.

Faced with this obstacle, Edmonds next contends that the statute was tolled until discovery of the fraud of the doctors. OCGA § 9-3-96. It is true that fraud by the defendant physician would toll the statute until discovery of the fraud. *Johnson*, supra at 426. But Edmonds does not allege fraud in his complaint; rather, he alleges only negligent treatment and advice and misdiagnosis, and that such acts were wanton and wilful. "Such an allegation is insufficient to raise an issue of fraud, as misdiagnosis only raises an issue of negligence under OCGA § 9-3-70 (a) (2) . . ." *Johnson*, supra at 427; see also *Bray v. Dixon*, 176 Ga. App. 895 (338 SE2d 872) (1985). The same would be true for giving the wrong opinion regarding treatment possibilities. OCGA § 9-3-70 (1).

Nor has Edmonds introduced evidence of fraud. One of the elements of fraud is that defendant know that the representation is

---

[2] The pre-1985 OCGA § 9-3-71 has been held unconstitutional in circumstances not present here. *Clark v. Singer*, 250 Ga. 470 (298 SE2d 484) (1983), declared the provision unconstitutional as applied to wrongful death actions. *Shessel v. Stroup*, 253 Ga. 56, 59 (316 SE2d 155) (1984), held it unconstitutional regarding claims in which the injury (pregnancy) did not occur until more than two years after the negligent act (the sterilization procedure). Plaintiff contends that his injury began immediately upon the negligent treatment and misdiagnosis. See *Shved v. Daly*, 174 Ga. App. 209, 210 (329 SE2d 536) (1985). He has not raised any constitutional challenge, which of course would have to be addressed to the Supreme Court of Georgia. 1983 Const., Art. VI, Sec. VI, Par. II (1).

false. *Reilly v. Mosley*, 165 Ga. App. 479, 480 (301 SE2d 649) (1983); *Hart v. Waldo*, 117 Ga. 590 (1) (43 SE 998) (1903). There is nothing in the record to reflect that any of the doctors knew at any time that the treatment or opinion given by him was in error, nor is there any evidence that any of them fraudulently withheld such information from the patient. See *Bray v. Dixon*, supra.

Not only is there no allegation of fraud in the complaint, nor any evidence of fraud with respect to the representations plaintiff quarrels with, there are no allegations of fraud which would have prevented Edmonds from discovering the alleged negligence so as to toll the statute. Edmonds has introduced no claim nor evidence whatsoever that he was fraudulently prevented by the doctors from seeking another opinion and thereby learning that treatment by way of surgery was available to alleviate his problem or that any of them fraudulently induced him to rely on their opinions; Edmonds simply gave evidence that he was led to rely on their opinion and that this is what caused him to wait until May 1982 to obtain the contrary opinion. But this falls far short of fraud, and a jury could not so find it, although we recognize that fraud having the effect of tolling the statute of limitations is generally a proper question for a jury to decide. *Johnson*, supra at 426. "If facts do exist which would toll the statute of limitations, the [plaintiff] has the burden of setting forth and supporting these facts. . . ." *Wade v. Thomasville Orthopedic Clinic*, 167 Ga. App. 278, 281 (2) (306 SE2d 366) (1983). His theory of fraudulently induced reliance has no support because, for one thing, he does not show that the defendants knew or should have known that their representations were not true and should have told him so. The evidence affirmatively shows that defendants did not fraudulently prevent Edmonds from discovering the alleged negligence of January and February 1982 so as to toll the statute until he learned of it. Even inducement to rely on advice, and assurances that it is correct, knowing the patient will rely does not constitute fraud unless there is knowledge that the advice or the assurances are false. See *Sutlive v. Hackney*, 164 Ga. App. 740 (297 SE2d 515) (1982); *Shved v. Daly*, 174 Ga. App. 209, 210 (329 SE2d 536) (1985). Plaintiff does not claim or show any fraudulent acts or omissions, representations or silences, which would have prevented him from seeking another opinion until May 1982 or at any time after they gave him theirs. Thus he has not created any factual issues in this regard, and Drs. Lipsius and Simone were entitled to summary judgment. See *Shved*, supra at 210.

### Case No. 71232

Dr. Bates also sought summary judgment but his motion was denied because the date he last saw Edmonds fell within the two-year

statute of limitations of OCGA § 9-3-71. He then moved for partial summary judgment arguing that Edmonds' cause of action may not include any claims against him for actions prior to two years before the filing date of the complaint. On cross-appeal Dr. Bates challenges the trial court's denial of this motion.

Although there is no dispute that Dr. Bates did treat and diagnose Edmonds in May 1982, the record is not yet developed to show whether any of the alleged negligent acts occurred prior to March 1, 1982. However, as Edmonds does not concede, and movant did not show, that all of the alleged negligent acts occurred on or after March 1, 1982, we must assume for purposes of this motion that some of the acts occurred before this time.

For the reasons discussed in our opinion of the main appeal, and viewing all ambiguities and conclusions most favorably toward Edmonds as respondent, Dr. Bates is entitled under OCGA § 9-3-71 and OCGA § 9-11-56 (d) to partial summary judgment as to any acts or occurrences prior to March 1, 1982. *Wade,* supra.

*Judgment affirmed in Case No. 71124. Judgment reversed in Case No. 71232. Deen, P. J., and Pope, J., concur.*

DECIDED FEBRUARY 7, 1986 —
REHEARING DENIED FEBRUARY 28, 1986 —

*Russell L. Adkins, Jr.,* for appellant (case no. 71124).
*Y. Kevin Williams, Robert H. Cleveland, Roy E. Barnes,* for appellees.
*Y. Kevin Williams,* for appellant (case no. 71232).
*Thomas J. Casurella, Russell L. Adkins, Jr.,* for appellee.