**James BARTON, et al., Plaintiffs,**

v.

**J. Chandler PETERSON, et al., Defendants.**

**Civ. A. No. 1:87–CV–1871–JOF.**

United States District Court,
N.D. Georgia,
Atlanta Division.

March 21, 1990.

Roy Harold Meeks, Jr., Peterson, Young, Self & Asselin and Penelope Williams Rumsey and Austin Lee Ramsey, Rumsey & Ramsey, Atlanta, Ga., for plaintiffs.

John L. Taylor, Jr., Vincent, Chorey, Taylor & Feil, Thomas J. Gallo, Harkleroad & Hermance, Atlanta, Ga., and Frances M. Toole, Bush, Ross, Gardner, Warren & Rudy, Tampa, Fla., for defendants.

## ORDER

FORRESTER, District Judge.

This securities fraud case is before the court on the motion for summary judgment by defendants J. Chandler Peterson and Phoenix Financial Corporation. This order follows oral arguments on these motions conducted before the court on August 11, 1989. For the reasons discussed below, the motion is GRANTED in part and DENIED in part.

## I. STATEMENT OF FACTS

Plaintiffs are thirteen individuals who invested in a Florida limited partnership known as Capital: Maple Leaf Estates, Ltd. J. Chandler Peterson d/b/a Peterson Wealth Management and the Phoenix Financial Corporation (Peterson defendants) were broker/dealers for the partnership. Capital Sunbelt Investments, Inc., Capital Sunbelt Investments Group, Inc., and Capital Sunbelt Securities, Inc. (Capital defendants) were the general partner and related companies.[1]

Capital: Maple Leaf Estates was one of two related partnerships. It was known as the "A side," which was to purchase a mobile home park near Port Charlotte, Florida. The "B side," a related partnership, was to lease the property from the "A side" partnership and manage it. Each of the plaintiffs except for Sharon Budnik bought their share of the partnership from Phoenix Financial in May and June of 1985.[2] At that time they executed subscription agreements and became limited partners.

The offering was not registered, but this fact was disclosed in the offering circular. The plaintiffs admit that they received the agreement to become a limited partner and an investors questionnaire. The investors questionnaire included a section which acknowledged receipt of the limited offering circular. Two plaintiffs left this section blank, Chamberlain and Barton. However, the other plaintiffs did fill out that section,

---

1. The Capital defendants have been dismissed through summary judgment and dismissal.

2. Budnik was employed by the Peterson defendants as a registered representative. She sold partnership shares to three clients, but once problems arose with the investment, she pur-

chased the investments back from them. She did not purchase the shares from either the Peterson or Capital defendants. She got assignments of claims from the clients in order to pursue their claims.

acknowledging receipt of the circular. Moreover, the subscription agreement included a section at paragraph five, in which the investor, by signing the agreement, acknowledged and represented that a) he had received a copy of the partnership agreement, certificate of limited partnership, and limited offering circular, and had been given the opportunity to make further inquiries from the partnership and to get information relevant to the investment; b) the information provided in the document was true and correct; c) that the units were being acquired for the purpose of investment and not for resale; d) he has been advised that the units have not been registered under either the Securities Act of 1933, or under the laws of the state of Florida, or any other state. The limited offering circular itself stated that broker/dealers were required to give a copy of the circular to prospective investors. It also stated that the units were not registered under either federal or Florida law.

At some point two principals in the Capital defendants allegedly misappropriated $1.5 million of the partnership's assets. Apparently, funds were loaned to the general partner, who then lent the funds to other partnerships run by the general partner. Partnership units ceased to be sold in September or October 1985. This complaint was filed on August 21, 1987.

Following the misappropriation of funds, investor meetings were held and the Peterson companies apparently were trying to recover the money for the investors. In connection with this effort, the plaintiffs executed agreements entitled "Authorization from Related Investors of Capital Sunbelt Corporation to Phoenix Strategy Corporation and Related Companies." This authorization in the main part authorized the Peterson defendants to act on the investors behalf to recover the funds. That document states that the investor had become aware of misappropriation of funds by Capital Sunbelt and also aware that the principals of Capital Sunbelt had conveyed their personal assets, including Capital stock, to the Maple Leaf investors and that the stock was being held by one of the Peterson companies. The investor accept-

ed his pro rata share of the assets and authorized the Phoenix Strategy Corporation to disburse the assets. The fourth paragraph authorizes Phoenix Strategy Corporation and related companies to seek the formation of groups of investors and a company to be owned by the investors to act on the investors' behalf. The investor agreed the investor representatives would be held harmless from liabilities for their action on behalf of all the investors.

The fifth paragraph of that authorization contains language that defendants contend is a release of all claims against them. That paragraph reads as follows:

> I authorize the Phoenix Group and their officers and agents to speak and act on my behalf in all matters relating to CSI [Capital Sunbelt Corporation] and its partnerships, and specifically convey to them the power to make compromises, give releases of claims, and to expend funds out of CSI and its partnerships, of funds to which I become entitled, to secure and enhance my rights. I waive and release any and all claims against the Phoenix Group and the Peterson groups and its officers, directors and agents, as well as against any members of any investor representative groups, and agree that they shall be fully indemnified out of assets of CSI and its partnerships to which I become entitled for any liabilities or costs they may incur while pursuing my interests.

*See, e.g.,* Defendants' Consolidated Exhibit A, page 1. The final paragraph concludes that others may rely on this appointment to confirm that the Phoenix Company was acting on the investors' behalf. All plaintiffs except Chamberlain signed this document.

Plaintiffs rely on two affidavits by Frank Chamberlain to support their claims of equitable tolling. The first affidavit states that the Peterson companies called a meeting of investors in October 1985, and introduced their counsel, who were introduced as representing the investors and the Peterson defendants in recovering the misappropriated funds. The counsel formed a corporation to protect the investors, for

which Chamberlain acted as president, and represented the corporation and the investors in the bankruptcy proceedings of the principals of the general partner.

The second affidavit states that at that October meeting, the investors were told that counsel had secured assignments of assets from the principals of the general partner, and that this would ultimately make the investors whole. In January 1986, counsel formed the corporation to recover assets and to work for the investors, headed by Chamberlain. Chamberlain was led to believe that this counsel would provide legal support and advice to both this company and the investors. In a letter to the investors prepared by counsel in January of 1986, Chamberlain stated that though the principals were contesting the assignment of assets in their bankruptcy, counsel stated that the investors are the rightful owners and would ultimately recover the assets. However, Chamberlain was told in January 1987 that the bankruptcy court had returned the assets to the principals of the general partner. Chamberlain was never told that he should get a separate legal opinion, and relied until early 1987 on counsel's representations that they were providing legal support and advice to him, and in reliance on this did not seek separate counsel or an opinion from separate counsel. Also, Chamberlain states that Phoenix Financial, through its affiliates, stressed the importance of presenting a "united front" in this situation.

A related case, *Weprin v. Peterson*, Civil Action No. 85–4670–MHS (N.D.Ga.), was also filed by other partnership investors. Following a trial, the *Weprin* jury found, among other things, that there were no material misrepresentations or omissions in the private placement memorandum for this investment. *See* Verdict–Special Interrogatories, Defendants' Exhibit C, dated March 22, 1988.[3] Judge Shoob, in an order following that trial, determined that the offering was exempt from the registration provisions of Section 5 of the 1933 Act and the Georgia Securities Act. Order, *Weprin v. Peterson*, No. 85–4670, —— F.Supp. —— (N.D.Ga. August 17, 1988).

The complaint in this action is substantially similar to the complaint in the *Weprin* case. Moreover, many of the discovery requests and information contained in the record of this action is apparently identical to that which was available in the *Weprin* action.

The Peterson defendants were not parties to the limited partnership agreement between the plaintiffs and the general partner. Neither J. Chandler Peterson, doing business as Peterson Wealth Management, nor Phoenix Financial controlled any of the Capital defendants; neither owned any stock or interest in the Capital defendants nor served as directors or officers of the Capital defendants.

## II. CONCLUSIONS OF LAW

Defendants seek summary judgment on practically all claims raised by plaintiffs on numerous grounds.[4] They argue that all the plaintiffs except Chamberlain released any and all of their claims against the Peterson defendants. They also argue that the registration issue and the issue of whether the limited offering circular was misleading have been determined adversely to plaintiffs in the *Weprin* case, and this court should accept that court's findings. The defendants then argue that the statute of limitations bars plaintiffs' federal and state registration and misrepresentation claims. Defendants also contend they are entitled to judgment on the plaintiffs' federal and state securities fraud claims, the criminal conversion claim, the claim seeking a refund of commissions, and the claim for controlling person liability. Defen-

---

**3.** Plaintiffs represent that the *Weprin* verdict also found that defendants breached their fiduciary duties to the plaintiffs.

**4.** Plaintiffs' response brief to the defendants' motion for summary judgment is in excess of twenty-five pages, the limit imposed by this court's Case Instructions, and was filed without leave of court to exceed that limitation. Ordinarily, the court would strike the brief and not consider it. However, because the issues in this case are many and complex, the court will consider the brief.

dants contend that they are entitled to summary judgment on the claims raised by Sharon Budnik because her claims are derivative, and are not assignable.

### A. Standard on Summary Judgment.

Fed.R.Civ.P. 56 mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of every element essential to the party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Brown v. City of Clewiston*, 848 F.2d 1534, 1537 (11th Cir.1988). The movant bears the "initial responsibility" of asserting the basis for his motion. *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. at 2553; *Livernois v. Medical Disposables, Inc.*, 837 F.2d 1018, 1022 (11th Cir.1988). The movant may discharge his burden by merely "showing—that is, pointing out to the district court—that there is an absence of evidence to support the non-moving party's case." *Celotex Corp.*, 477 U.S. at 325, 106 S.Ct. at 2554.

After the movant has carried his burden, the non-moving party is then required "to go beyond the pleadings" and present competent evidence designating "specific facts showing that there is a genuine issue for trial." *Id.* at 324, 106 S.Ct. at 2553. Though the court is to view all evidence and factual inferences in a light most favorable to the non-moving party, *Samples v. City of Atlanta*, 846 F.2d 1328, 1331 (11th Cir.1988), "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (emphasis in original); *Brown*, 848 F.2d at 1537. Thus, to survive a motion for summary judgment, the non-mov-

ing party must come forward with specific evidence of *every* element material to his case so as to create a genuine issue for trial. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552; *Brown*, 848 F.2d at 1537.

### B. Releases.

Defendants contend that the authorization document, particularly the fifth paragraph, acts as a release of all claims against the Peterson and Phoenix Financial defendants.[5] The plaintiff argues that the language of the fifth paragraph is not binding on claims covered by this lawsuit, because the language only releases claims that would arise after the execution of the authorization. Plaintiff further argues that any such release is void against public policy.

■ Generally, one is bound by the terms of release or any contract signed, even if the person did not read that contract. *Wheat v. Montgomery*, 130 Ga.App. 202, 203, 202 S.E.2d 664 (1973). The burden of proof is on the one seeking to avoid the release to show that it was within an exception to this rule. *Cochran v. Murrah*, 235 Ga. 304, 219 S.E.2d 421 (1975).

■ A contract is not ambiguous, even where it is difficult to construe, unless and until an application of the pertinent rules of interpretation leaves it uncertain as to which of two or more possible meanings represents the true intention of the parties. *Crooks v. Crim*, 159 Ga.App. 745, 285 S.E.2d 84 (1981). No construction of the contract is required when the language employed by the parties is plain, unambiguous and capable of one reasonable interpretation. *Id.*

The plaintiffs urged the court to read the authorization as "I waive and release any and all claims against Phoenix Group and Peterson Groups ... for any liability or costs they may incur while pursuing my interest." Plaintiffs' Response Brief, p. 3.

---

**5.** I waive and release any and all claims against the Phoenix Group and the Peterson groups and its officers, directors and agents, as well as against any members of any investor representative groups, and agree that they shall be fully indemnified out of assets of CSI and its partnerships to which I become entitled for any liabilities or costs they may incur while pursuing my interests.

This reading is consistent with the general thrust of the document authorizing Peterson and Phoenix Group to act for them in recovering the misappropriated funds from the Capital defendants. However, this interpretation is not supported by the actual language of the agreement.

█ The sentence is divided into two main clauses, the first waiving claims and the second indemnifying Peterson and the Phoenix Group. The clause which includes "while pursuing my interests" is the indemnifying clause, and is most logically read as indemnifying Peterson and Phoenix Group for liabilities or costs they incurred from that point forward while pursuing the plaintiffs' interest in recovering the misappropriated funds. If the section had meant what the plaintiffs urge, that phrase would have been separated by a comma, so the sentence would read, "I waive and release all claims against Phoenix and Peterson and agree they should be indemnified from the assets of CSI to which I become entitled, for liabilities and costs they incur while pursuing my interest." By deleting the descriptive phrases, and simplifying this complex sentence, it is clear that this sentence is really two sections. Without the descriptive phrases, the sentence reads, "I waive and release any and all claims against the Phoenix Group and the Peterson Groups and agree that they shall be fully indemnified for any liabilities and costs they may incur while pursuing my interest." It is clear from this simplification that there are two separate purposes within the one sentence. The language of the section can only reasonably be interpreted as waiving claims against Phoenix and Peterson. As stated by another judge of this court, "[i]t is not the court's province to pass on the wisdom of a particular agreement, even though its terms may have been accepted by one party as the result of oversight or poor cerebration. Absent special circumstances, the court cannot correct for the mistake, for ignorance of one party when he had the responsibility, and opportunity, to protect himself." *Smith v. Seaboard Coast Line R. Co.*, 639 F.2d 1235, 1241 (5th Cir. Unit B 1981) (Order of District Judge William C.

O'Kelley, published as appendix to per curiam affirmance).

█ Plaintiffs next argue that the releases are void as against public policy. This argument is without merit. In Georgia, a court must use extreme caution in declaring a contract void as against public policy. *Emory University v. Porubiansky*, 248 Ga. 391, 282 S.E.2d 903 (1981), *aff'g, Porubiansky v. Emory University*, 156 Ga.App. 602, 275 S.E.2d 163 (1980). Persons are entitled to full freedom to contract unless the contract violates public policy. *Id.* A contract will not be voided as against public policy except where the court is free from doubt and injury to the public interest clearly appears. *Id.* Plaintiffs rely on *Smith v. Hospital Authority*, 160 Ga.App. 387, 287 S.E.2d 99 (1981), where the Georgia Court of Appeals applied the criteria established in *Porubiansky* 156 Ga.App. at 602, 275 S.E.2d 163, to a medical malpractice situation.

*Porubiansky* invalidated a contract which avoided liability for a doctor's professional negligence. The Georgia Supreme Court affirmed *Porubiansky* based on the strong policy of the state and legislature to protect the health of the public, and to regulate professionals, because it is against the public policy to relieve professionals of their duty to exercise reasonable care. The court also noted that in a doctor-patient relationship one party has greater responsibility than an ordinary person. The criteria used by the Georgia Court of Appeals in *Porubiansky* and *Smith*, and approved by the Supreme Court in *Emory*, to void a contract on public policy grounds are:

1) It concerns a business of a type generally thought suitable for public regulation.

2) The party seeking exculpation is engaged in performing a service of great importance to the public, which is often a matter of practical necessity for some members of the public.

3) The party holds himself out as willing to perform this service for any member of the public who seeks it, or at least for

any member coming within certain established standards.

4) As a result of the essential nature of this service, in the economic setting of the transaction, the party invoking exculpation possesses a decisive advantage of bargaining strength against any member of the public who seeks his services.

5) In exercising a superior bargaining power the party confronts the public with a standardized adhesion contract of exculpation, and it makes no provision whereby a purchaser may pay additional reasonable fees and obtain protection against negligence.

6) Finally, as a result of the transaction, the person or property of the purchaser is placed under the control of the seller, subject to the risk of carelessness by the seller or his agents.

*Smith*, 160 Ga.App. at 389, 287 S.E.2d 99.

■ Clearly, the present situation does not fit this criteria. Though the security business is regulated, the service is not one of practical necessity, nor are brokers generally willing to perform their services for any member of the public. Moreover, though this contract was the same for each investor, it is obviously crafted for a specific situation and is not an adhesion contract in its terms or in the way it was presented to the plaintiffs for signature. The parties were not of such unequal bargaining power as to make an adhesion contract. Therefore, the contract is not void as against public policy.

The contract is valid, and those plaintiffs who signed it are bound by its terms. Therefore, all plaintiffs except Chamberlain have waived and released all claims against Phoenix and Peterson. The discussion below, therefore, applies only to Chamberlain's claims.

**C. Judicial Notice.**

■ Peterson and Phoenix Financial raise the same judicial notice issue as did the Capital defendants in their motion for summary judgment. For the reasons stated in the order denying the Capital defendants motion, judicial notice of the *Weprin* verdict will not be taken. *See* Order, January 11, 1990. First, the jury verdict and court order in *Weprin* are not readily determinable facts so as to come under Fed. R.Evid. 201. All cases relied upon by the defendants were based on one party being charged with a fact determined in prior litigation in which that party participated. In the case particularly relied upon by these defendants, *United States v. Webber*, 396 F.2d 381 (3rd Cir.1968), the defendants were bound as privies to the corporate party in the prior litigation. *Webber* also was based on judicial estoppel. Defendants have not shown that plaintiffs can or should be bound by the *Weprin* case when they were not parties to that case. Therefore, judicial notice of the *Weprin* verdict and order is inappropriate.

**D. Statute of Limitations.**

**1. Federal Registration and Misrepresentation Claims.**

Plaintiffs' claims under section 12(1) (registration) and section 12(2) (misrepresentation) of the Securities Act of 1933, 15 U.S.C. § 77*l* (1) and (2), are governed by a statute of limitations found in Section 13 of the 1933 Act, 15 U.S.C. § 77m. That statute provides,

No action shall be maintained to enforce any liability created under section 77k or 77*l* (2) of this title unless brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence, or, if the action is to enforce a liability created under section 77*l* (1) of this title, unless brought within one year after the violation upon which it is based. In no event shall any action be brought to enforce a liability created under section 77k or 77*l* (1) of this title more than three years after the security was bona fide offered to the public, or under section 77*l* (2) of this title more than three years after the sale.

15 U.S.C. § 77m.

*(a) Section 12(1) Claims.*

Plaintiff admits the registration claim under Section 12(1) was brought beyond

the one-year limit provided by Section 13. Plaintiff argues that the statute of limitations has been tolled by equitable tolling, due to the Peterson defendants and their attorneys' concealment of the cause of action. The defendants argue that tolling is not available under Section 12(1).

There are two general types of equitable tolling. The first is when the defendant takes affirmative actions to conceal the cause of action. *Hill v. Texaco*, 825 F.2d 333, 335 (11th Cir.1987). This type of equitable tolling may also be triggered when the defendant has a fiduciary duty to make disclosures, or where the wrong is self-concealing. *Id.* at 335 n. 2. Equitable tolling also can be triggered when the cause of action itself is based in fraud, and concealment is inherent in the fraud. *See Prather v. Neva Paperbacks, Inc.*, 446 F.2d 338 (5th Cir.1971).

■ There is, however, a related, distinct doctrine of equitable estoppel, where the defendant is estopped from asserting the statute of limitations because the defendant's conduct induced the plaintiff to forebear from bringing suit within the statute of limitations period. This doctrine arises from the equitable principle that a wrongdoer cannot take advantage of his wrongdoing. *Glus v. Brooklyn Eastern District Terminal*, 359 U.S. 231, 79 S.Ct. 760, 3 L.Ed.2d 770 (1959); *Cook v. Deltona Corp.*, 753 F.2d 1552 (11th Cir.1985); *Sanchez v. Loffland Bros. Co.*, 626 F.2d 1228 (5th Cir.1980), *cert. denied*, 452 U.S. 962, 101 S.Ct. 3112, 69 L.Ed.2d 974 (1981); *Bomba v. W.L. Belvedere, Inc.*, 579 F.2d 1067 (7th Cir.1978).

■ The better reasoned authority holds that equitable tolling and fraudulent concealment are not available to toll the one-year statute of limitation for registration claims. Equitable tolling, though read into every federal statute of limitations, cannot be applied in the face of contrary congressional intent. *Hill*, 825 F.2d at 334. The language of Section 13 allows a discovery rule for Section 12(2) claims, but omits it for Section 12(1) claims. This indicates a congressional intent that the one-year limit is absolute. Moreover, a registration claim is not one for fraud, and whether a security is registered is a matter of public record, and therefore cannot really be concealed. *Cook v. Avien*, 573 F.2d 685 (1st Cir.1978); *McLernon v. Source International, Inc.*, 701 F.Supp. 1422 (E.D. Wis.1988); *Lubin v. Sybedon Corp.*, 688 F.Supp. 1425 (S.D.Calif.1988); *In re Rexplore, Inc., Securities Litigation*, 671 F.Supp. 679 (N.D.Calif.1987); *Stone v. Fossil Oil & Gas*, 657 F.Supp. 1449 (D.N.M. 1987); *McCullough v. Leede Oil & Gas, Inc.*, 617 F.Supp. 384 (W.D.Okla.1985). *But see, In re Gas Reclamation, Inc., Securities Litigation*, 659 F.Supp. 493 (S.D. N.Y.1987); *In re National Mortgage Equity Corp. Mortgage Pool Certificates Securities Litigation*, 636 F.Supp. 1138 (C.D. Calif.1986); *Houlihan v. Anderson-Stokes, Inc.*, 434 F.Supp. 1319 (D.D.C. 1977).

Moreover, fraudulent concealment cannot apply in this case because the offering circular stated that the partnership shares were not registered, and Chamberlain's subscription agreement acknowledged that he had been advised the units were not registered. Chamberlain knew from the outset of his involvement with this investment that the shares were not registered. Tolling is not available.

■ However, equitable estoppel may apply. Equitable estoppel is focused on the defendant's conduct rather than plaintiff's claim. The Supreme Court in *Glus* held that the principle of equitable estoppel applied to the Federal Employers' Liability Act statute of limitations because of allegations that the defendant's agents conducted themselves in a way that the plaintiff was justifiably misled into a good faith belief that he could begin the action within seven years, rather than the actual three years. 359 U.S. at 235, 79 S.Ct. at 763. This doctrine has been applied to absolute statutes of limitation, as in *Glus* and *Bomba*, 579 F.2d at 1069. The doctrine as enunciated in *Glus* by the Supreme Court controls, and equitable estoppel can be applied to the one-year statute of limitations for a Section

12(1) violation.[6] Consideration of the application of equitable estoppel to this case is taken up below.

### (b) Section 12(2) Claims.

█ Liability is imposed under Section 12(2) on a seller for untrue statements of material facts or omissions of a material fact in a prospectus or oral communication. 15 U.S.C. § 77*l* (2). The action must be brought within one year "after the discovery of the untrue statement or omission, or after such discovery should have been made by the exercise of reasonable diligence...." 15 U.S.C. § 77m. The misrepresentations in the prospectus or oral communications inducing the sale must necessarily have occurred before the sales in May and June of 1985. The defendants argue that the misrepresentations, if any, should have been discovered by September or October of 1985, when the misappropriation of funds was revealed. The standard for a discovered wrong is minimal—"any fact that should excite his suspicion is the same as actual knowledge of his entire claim." *Hill*, 825 F.2d at 335, quoting *Dayco Corp. v. Goodyear Tire & Rubber Co.*, 523 F.2d 389, 394 (6th Cir.1975). The misappropriation by the general partners was certainly a fact that would excite suspicion in a reasonable investor. Therefore, the limitation began to run, at the latest, in October 1985. This action, filed in August 1987 is therefore untimely. However, as with the 12(1) claims, the plaintiffs rely in the Chamberlain affidavits and though the plaintiffs explicitly rely on equitable tolling, the facts form the arguable basis for equitable estoppel.

### (c) Equitable Estoppel.

█ To prove equitable estoppel and avoid the statute of limitations, the plaintiff must show that he was misled by the defendants or their agents so that he delayed bringing this suit because of 1) an affirmative statement that the statutory period was longer than it actually was, or 2) promises to make a better settlement if the plaintiff did not bring suit, or 3) comparable representations or conduct. *Keefe v. Bahama Cruise Line*, 867 F.2d 1318, 1324 (11th Cir.1989). The plaintiff need not prove bad faith, but the conduct must be directed towards obtaining the delay in bringing suit, and must be motivated by a desire to lull the plaintiff into not bringing a lawsuit. *Kazanzas v. Walt Disney World Co.*, 704 F.2d 1527, 1530 (11th Cir.), *cert. denied*, 464 U.S. 982, 104 S.Ct. 425, 78 L.Ed.2d 360 (1983). The nature of the representation and conduct are of crucial significance. *Sanchez*, 626 F.2d at 1228. The conduct must be so misleading as to cause the plaintiff's failure to file suit. *Id.*

In *Keefe*, estoppel was invoked because the defendants represented that the claim had been paid, and in *Ott v. Midland–Ross Corporation*, 600 F.2d 24 (6th Cir.1979), it applied when the company fraudulently promised the plaintiff that he would work under a consultation agreement which was meant to and did prevent him from filing an age discrimination suit. However, it did not apply in *Burke v. Gateway Clipper, Inc.*, 441 F.2d 946 (3rd Cir.1971), where the defendants agents, friends of the plaintiff, said he "had nothing else coming to him." *Id.* The court held estoppel did not apply because the statements did not prevent plaintiff from bringing the suit. Similarly, ignorance of the law, legal rights or failure to seek legal advice does not invoke estoppel. *Kazanzas*, 704 F.2d at 1530. A good faith attempt to rehire did not invoke estoppel. *Id.*

█ The plaintiffs' only evidence on tolling is the complaint in a related case, *Barton v. Harkleroad*, Civil Action No. 88–1462 (N.D.Ga.), and two affidavits by Chamberlain. A complaint is not evidence, and is not sufficient to defeat a summary judgment, when the non-movant is required to present specific facts. Rule 56, *Celotex*, 477 U.S. at 317, 106 S.Ct. at 2548. There-

---

6. Additionally, the purpose of a statute of limitation, at least in part, is to protect the defendants and for fairness to the defendant. *United States v. Kubrick*, 444 U.S. 111, 117, 100 S.Ct. 352, 356, 62 L.Ed.2d 259 (1979); *Albertson v. T.J. Stevenson and Co., Inc.*, 749 F.2d 223, 232 (5th Cir. 1984). When a defendant has acted inequitably, this justification no longer is relevant.

fore, the Chamberlain affidavits are the only evidence presented by plaintiff.

It is apparent from these affidavits that Chamberlain relied on Phoenix Financial and its counsel in their statements that they were working to get the misappropriated funds back from the general partner's principals, and in reliance on these statements did not seek legal advice. The evidence provided by the plaintiff does not show any statement that the statute of limitations was longer than is true, or that the defendants would settle the action if plaintiff would not sue. There is no comparable conduct that would invoke estoppel. The representations were not directed to preventing plaintiff from bringing suit. The most that can be said from the evidence presented by the plaintiff is that the Peterson defendants and their counsel gave plaintiff a bad opinion that the funds would be returned to the investors. The evidence does not show that the statements were directed, either intentionally or unintentionally, to cause plaintiff to delay bringing these claims. The defendants cannot be said to have induced plaintiff into forebearing from bringing suit, and equitable estoppel does not apply to these claims. Therefore, plaintiff's claims under Sections 12(1) and 12(2) of the 1933 Act are barred by the statute of limitations at Section 13.

## 2. State Law Claims.

Plaintiffs assert liability under O.C.G.A § 10–5–12(a) which imposes liability through O.C.G.A. § 10–5–14(a) for selling an unregistered security, making an untrue statement or omission, or employing a fraudulent scheme or device in connection with an offer for sale of a security. The statute of limitations to bring an action under this section is two years from the date of the contract for sale, or the date of sale, if there is no contract for sale. O.C. G.A. § 10–5–14(d).[7] This statute of limita-

tions applies by its terms to both the registration and misrepresentation claims, so this action is untimely, as it was brought more than two years from the sale of the securities at issue.

Plaintiff argues that the statute was tolled by federal tolling principles, or if not, by the Georgia statute which provides for tolling in the case of fraud, O.C.G.A. § 9–3–96.

As this is not a federal cause of action, nor a federal statute of limitations, federal tolling principles do not apply. *Wilkinson v. Paine, Webber, Jackson & Curtis, Inc.,* 585 F.Supp. 23 (N.D.Ga.1983).

Georgia law provides for tolling of a statute of limitations under O.C.G.A. § 9–3–96. This statute provides, "If the defendant or those under whom he claims are guilty of a fraud by which the plaintiff has been debarred or deterred from bringing an action, the period of limitation shall run only from the time of the plaintiff's discovery of the fraud." Georgia courts recognize two types of fraudulent concealment. *Shipman v. Horizon Corp.,* 245 Ga. 808, 267 S.E.2d 244 (1980). The first is where actionable fraud is the gravamen of an action.[8] In this situation, the statute of limitations is tolled until the fraud is discovered or by reasonable diligence should have been discovered. *Id.* at 808, 267 S.E.2d 244. No other independent fraudulent act is required to toll the statute, and silence is treated as a continuation of the original fraud. *Id.* The plaintiff must use reasonable diligence to discover the fraud, though the lack of such diligence may be excused where a relationship of trust and confidence exists between the parties. *Id.* at 808–09, 267 S.E.2d 244. The second type of fraudulent concealment recognized in Georgia is where the basis of the action is other than actual fraud. In this case, a separate and independent actual fraud must be shown to toll the statute of limita-

---

**7.** This section was amended effective April 1, 1989. It was previously codified at § 10–5–14(c), however, no change in substance of the statute of limitations at issue here was altered at the time of that amendment.

**8.** "Actual fraud consists of any kind of artifice by which another is deceived. Constructive fraud consists of any act of omission or commission, contrary to legal or equitable duty, trust, or confidence justly reposed, which is contrary to good conscience and operates to the injury of another." O.C.G.A. § 23–2–51(b).

tions. Silence in this situation does not toll the statute unless a confidential relationship and duty to disclose exists. The statute is tolled only until the fraud is discovered, or by reasonable diligence should have been discovered. *Id.* at 809, 267 S.E.2d 244.

Promises to pay on a note, *Bank of Jonesboro v. Carnes*, 187 Ga. 795, 2 S.E.2d 495 (1939), or promises to repair a defective product, *Kemp v. Bell–View, Inc.*, 179 Ga. App. 577, 346 S.E.2d 923 (1986), are not enough, without more, to constitute fraud sufficient to toll the statute of limitations. Also, an expression of opinion, especially when the matter is disputed, is not sufficient to establish fraud that tolls the statute of limitations. *Riddle v. Driebe*, 153 Ga.App. 276, 265 S.E.2d 92 (1980); *see also Forsyth v. Jim Walter Homes, Inc.*, 177 Ga.App. 353, 339 S.E.2d 350 (1985).

Georgia courts have indicated that they might recognize some form of equitable estoppel. In *Carnes*, 187 Ga. at 800–03, 2 S.E.2d 495, the Supreme Court discussed those cases in foreign jurisdictions which had been raised in the proceeding, and noted that all included some kind of intentional or negligent deception intending to induce plaintiff to withhold bringing of the lawsuit. The Court made clear that such an equitable estoppel theory would only be accepted where there was a deception or an express misrepresentation or fraud. *Id.* at 803, 2 S.E.2d 495. Recently, the Georgia Court of Appeals in *Hill v. Fordham*, 186 Ga.App. 354, 367 S.E.2d 128 (1988), noted that other jurisdictions recognize equitable estoppel where the defendant's fraud or conduct is relied upon by the plaintiff in forebearing suit, citing *Bomba*, 579 F.2d at 1067. The court held that an issue of fraud remained which would estop the defendant from asserting the statute of repose. The fraudulent conduct relied upon by the court in that case was that the defendant dentist knew of the plaintiff's impacted tooth, but did not inform the plaintiff of the problem, and the court noted the distinction between

this situation and that of a simple misdiagnosis.

All of these cases, whether under the fraudulent tolling statute, O.C.G.A. § 9–3–96, or in a discussion of equitable estoppel, require affirmative fraudulent conduct to toll the statute of limitations. In the instant case, counsel's statements that the assignments would be upheld, and the assets used to repay the investors are essentially opinions, that cannot support fraudulent concealment. *Riddle*, 153 Ga. App. at 276, 265 S.E.2d 92. Even if they can be seen as misrepresentations, there is no evidence that the defendants knew they were false, or intended to deceive the plaintiff by them. *See Edmonds v. Bates*, 178 Ga.App. 69, 72, 342 S.E.2d 476 (1986) ("[I]nducement to rely on advice, and assurances that it is correct, knowing the patient will rely does not constitute fraud unless there is knowledge that the advice or the assurances are false."). There is no evidence that either the Peterson defendants or their counsel affirmatively prevented the plaintiffs from seeking outside counsel. *Id.* at 72, 342 S.E.2d 476. There is no evidence in the record that would support a finding of fraudulent concealment or equitable estoppel, as defined by the Georgia courts. Therefore, plaintiffs' state law claims under O.C.G.A. § 10–5–12(a) are barred by the two-year limitation of O.C.G.A. § 10–5–14(d).

E. *Exemption from Registration.*

1. Federal and Georgia Law.

As stated above, plaintiff's federal and Georgia state law claim of the sale of an unregistered security is barred by the statute of limitations.[9]

2. Florida Law.

Defendants claim an exemption from registration under Fla.Stat.Ann. § 517.061(11)(a). That section provides an exemption for "[t]he offer or sale, by or on behalf of an issuer, of its own securities"

---

9. However, even if the Georgia claim was not barred, defendants motion on this ground is meritorious, as the Office of the Secretary of State of Georgia issued a certificate that the offering had complied with exemption filing requirements. Exhibit 3 to Berndt Affidavit.

which meets five conditions.[10] The burden of proof to establish the right to the exemption is on the party claiming the benefit of the exemption. Fla.Stat.Ann. § 517.171; *Weinberg v. Pennington*, 462 So.2d 862 (Fla.Dist.Ct.App.1985).

Defendants' motion must be denied. First, the defendant has not adequately explained how this is an offer on behalf of an issuer of its own securities. The offer was for Capital: Maple Leaf Estates, but apparently was issued by Capital Sunbelt. Second, evidence was not provided that the information in the circular or available otherwise to the investors was a full and fair disclosure of all material information.[11]

### F. *Criminal Conversion (Count X).*

Plaintiff agrees with defendants contention that Count X applies only to the Capital defendants. Therefore, summary judgment for the Peterson defendants is GRANTED on this count.

### G. *Budnik's Claims.*

Defendants argue that plaintiff Budnik cannot recover as an assignee. However, because the authorization waived all claims against the Peterson defendants, this issue need not be addressed.

### H. *Federal and State Securities Fraud.*

 Section 10(b) of the Securities Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5, 17 C.F.R. § 240.10b–5, are the anti-fraud provisions of the securities laws. They prohibit any manipulative or deceptive device or contrivance and any device, scheme or artifice to defraud, or any act, practice, or course of dealing which operates as a fraud or deceit. To succeed under these sections, the plaintiff must prove "(1) a misstatement or omission (2) of a material fact (3) made with scienter (4) upon which the plaintiff relied (5) that proximately caused the plaintiff's loss." *McDonald v. Alan Bush Brokerage Co.*, 863 F.2d 809, 814 (11th Cir.1989). The Supreme Court held in *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976) that scienter "refers to a mental state embracing intent to deceive, manipulate or defraud." *Id.* at 194 n. 12, 96 S.Ct. at 1381 n. 12. Though the Supreme Court in that case declined to determine if recklessness could satisfy this requirement, *id.*, the rule in this circuit is that severe recklessness meets the scienter requirement. *McDonald*, 863 F.2d at 814. Severe recklessness is defined as highly unreasonable omissions or misrepresentations that involve an extreme departure from the ordinary standards of care, and that present a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it. *Id.*, quoting *Broad v. Rockwell International Corp.*, 642 F.2d 929, 961–62 (5th Cir.) (en banc), *cert. denied*, 454 U.S. 965, 102 S.Ct. 506, 70 L.Ed.2d 380 (1981).

Defendants argue that plaintiff can present no evidence of scienter, either severe recklessness or intent, to succeed in his fraud claim under Section 10(b) and Rule 10b–5.[12] Plaintiff points to testimony of his expert witness that the investment was inherently risky and the defendants should not have sold it to their clients. The most persuasive testimony on this point was that the expert would not have wanted to be a party to the transaction because of the high risk elements of the deal, the lack

---

**10.** 1) That there are no more than 35 purchasers in the state; 2) the securities are not offered or sold by general solicitation or general advertising; 3) prior to the sale each purchaser is provided with or given reasonable access to full and fair disclosure of all material information; 4) the dealer is registered under the chapter; and 5) the sale in Florida is voidable by the purchaser within three days of the sale when sales are made to five or more persons in the state.

**11.** The other four requirements appear to be met.

**12.** Contrary to plaintiff's contention, it is sufficient for the movant to simply point out to the court that there is an absence of evidence to support the non-movant's case. *Celotex Corp.*, 477 U.S. at 325, 106 S.Ct. at 2554. The non-movant is then required to point to specific facts supporting that element of the claim. *Id.* at 324, 106 S.Ct. at 2253.

of an escrow account and the fact that the general partner was taking the unusual position of buying outstanding shares if not all were sold. Winks Deposition pp. 119–123. Also, there is testimony that the Peterson defendants did not look at the general partner's books after January, 1984, and if they had, they would have found the information to show the general partner would not be able to cover its obligations to the partnership. Though this may only be negligence as defendants contend, it does present evidence that should be presented to the jury. Thus, a question of fact for jury determination on the intent of the Peterson defendants is presented and summary judgment must be denied.

### I. *Return of Commissions.*

Count XV of the complaint alleges plaintiffs are entitled to a return of commissions paid to the Peterson defendants. This was the basis for plaintiffs' motion for summary judgment denied orally at the hearing on these motions. Because the plaintiffs were not a party to the contract between Capital and Phoenix Financial that provided for commissions and have not demonstrated that they were third party beneficiaries to that contract, they have not shown an entitlement to the return of the commissions and defendants' motion for summary judgment is GRANTED on Count XV.

### J. *Controlling Persons Liability.*

Plaintiff admits the Peterson defendants were not controlling persons of the Capital Sunbelt defendants. Therefore, they cannot be liable under Section 20(a) of the 1934 Act, 15 U.S.C. § 78t(a) for the Capital defendants' actions. However, Count IV of the complaint alleges that Peterson was a controlling person of Peterson Wealth and Phoenix Financial, and that the defendants violated Section 10(b) and Rule 10b–5. Therefore, defendants are not entitled to summary judgment on all of Count IV, but only to those parts concerning controlling person liability of the Capital defendants.

### III. CONCLUSION

In summary, defendants motion is GRANTED against plaintiffs Barton, W.E.

Connolly, G.C. Connolly, Cornish, Jun, Kirkconnell, Tolsma, Fillastre, Gilmer as attorney in fact for Panzy Odell, Danzig, Budnik, and Blank, on all claims, as they released and waived their claims against the Peterson defendants. The motion is also GRANTED on claims under Sections 12(1) and 12(2) of the 1933 Securities Act and O.C.G.A. § 10–5–12(a); on Count X; on Count XV; and in part on Count IV, as the Peterson defendants are not liable as controlling persons of the Capital defendants. The motion is DENIED on all other grounds.

SO ORDERED.