960 F.2d 146
 35 Fed. R. Evid. Serv. 681
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
GIBBES, INCORPORATED, II, Plaintiff-Appellant,
v.
LAW ENGINEERING, INCORPORATED, Defendant-Appellee.
 No. 91-1048.
 United States Court of Appeals,
Fourth Circuit.
 Argued: March 3, 1992
Decided: April 20, 1992
 
 ARGUED: Herbert William Hamilton, Thomas E. McCutchen, Jr., Whaley, McCutchen, Blanton & Rhodes, Columbia, South Carolina, for Appellant.
 Robert O'Neal Fleming, Jr., Smith & Fleming, Atlanta, Georgia, for Appellee.
 ON BRIEF: James L. Werner, Ogletree, Deakins, Nash, Smoak & Stewart, Columbia, South Carolina, for Appellee.
 Before WILKINSON, Circuit Judge, and BUTZNER and CHAPMAN, Senior Circuit Judges.
 PER CURIAM:
 
 OPINION
 
 1
 Appellant filed this diversity action against appellee complaining of the manner in which appellee performed the geotechnical exploration for which it was retained. The district court granted summary judgment to appellee on all claims. Although we affirm the district court's determination that the contractual clauses limiting appellee's liability and disclaiming implied warranties are enforceable, we reverse the grant of summary judgment for appellee on the breach of contract and professional negligence claims.
 
 I.
 
 2
 The Gibbes family has been in the automobile business in Columbia, South Carolina, since 1945. Appellant, Gibbes, Inc., II (Gibbes Inc.), a South Carolina corporation, was formed by members of the family to create new Volkswagen and Mazda automobile dealerships in Columbia. As a potential site for the dealerships, Gibbes identified a parcel of undeveloped land on Broad River Road in Columbia, and it obtained an option to purchase the property.
 
 
 3
 Before exercising its option to purchase, Gibbes Inc. wanted to obtain a geotechnical exploration of the land to ensure its suitability for construction of the facilities desired. Accordingly, LeConte Gibbes, chairman of Gibbes Inc., went to the Columbia office of appellee Law Engineering, Inc. (Law). Law is a Georgia corporation that provides construction testing and engineering services. Gibbes told Robert McLeod, an engineer at Law, that Gibbes Inc. wanted to determine "if the land was suitable to put a dealership there, and what was under the surface." Gibbes provided McLeod with a topographical survey of the property and a proposed site plan indicating where planned facilities were to be located. Gibbes placed no financial restriction on the extent of the investigation. McLeod told Gibbes that Law would develop a proposal.
 
 
 4
 McLeod hand-delivered the proposal to Gibbes on October 1, 1987. The proposal contained a summary of information relating to the proposed construction, an outline of the investigation that Law proposed to perform, information on Law's fee, and a suggested schedule. The proposal also included an acceptance sheet, the reverse side of which contained a full page of "general conditions." Among the general conditions was a clause that warranted that Law "will use that degree of care and skill ordinarily exercised under similar conditions by reputable members of our profession practicing in the same or similar locality," and that disclaimed other warranties, express or implied. The page also contained a clause limiting Law's liability for "any error, omission or other professional negligence" to $50,000 or Law's fee, whichever is greater, though it permitted Gibbes to purchase an increase in the maximum liability. A choice-of-law clause provided that the "agreement shall be governed in all respects by the laws of the State of Georgia."
 
 
 5
 On October 2, LeConte Gibbes signed the proposal acceptance sheet on behalf of Gibbes Inc., and Law proceeded with the site investigation. After completion of the investigation, on November 6 Law submitted to Gibbes Inc. a written report, which described its findings and recommendations. Based on the report, Gibbes Inc. purchased the property. A site design, performed by another party after Law's report had been presented to Gibbes Inc., located the new dealerships' buildings and display lots at an elevation significantly below the original elevation of the land. The reduction in elevation meant that construction would involve substantial excavation, rather than cut and fill.
 
 
 6
 Apparently, Law had not anticipated that construction would involve excavation and failed to tailor its geotechnical investigation accordingly. In conducting its investigation Law had not encountered the existence of subsurface rock. Once construction began, however, large quantities of rock were encountered during excavation. The necessity of excavating rock forced Gibbes Inc. to incur unanticipated additional expense and delay.
 
 
 7
 In December 1989, Gibbes Inc. filed this diversity action against Law. The complaint asserted claims for breach of contract, breach of express and implied warranties, and professional negligence, and it sought actual damages of $750,000 as well as punitive damages. Law moved for summary judgment on all claims and, in the alternative, for partial summary judgment limiting its maximum liability to $50,000 under the limitation of liability clause. The district court granted summary judgment for Law. First it held that the Law undertook all actions specified in the proposal and, as a result, it did not breach its contract with Gibbes Inc. According to the district court, the contract "did not encompass studies relevant to extensive excavation." Second, the court enforced the contract's exclusion of implied warranties and held that the express warranty merely incorporated the professional standard of care. As to the professional negligence claim, the court held that Gibbes Inc. failed to satisfy an essential element of the cause of action, expert testimony as to the standard of care, because Gibbes Inc.'s proffered expert could not be qualified under Rule 702 of the Federal Rules of Evidence. Finally, the court found the limitation of liability enforceable and applicable to all claims based on breach of express and implied warranties and professional negligence.
 
 
 8
 Gibbes Inc. filed a timely notice of appeal.
 
 II.
 
 9
 We first address Gibbes Inc.'s breach of contract claim. Gibbes Inc. argues that it contracted, not for performance of the particular technical investigations mentioned in Law's proposal, but rather for a complete "geotechnical exploration" of the site. It argues that the contract itself reflects the breadth of the exploration that Law agreed to perform. Gibbes Inc. points to contractual language that requires Law to provide "[a] review of area and site geological conditions" and, most significantly, "[a] review of subsurface soil stratigraphy with pertinent available physical properties." Moreover, the subject headings for both the proposal and the report speak of a "[s]ubsurface" or "[g]eotechnical" exploration of the proposed site of the dealerships. Accordingly, the contract, according to Gibbes Inc., required Law to determine the presence of the sort of rock Gibbes Inc. actually encountered. Conceding that the contract also states the technical procedures by which Law intended to accomplish these and other tasks, Gibbes Inc. emphasizes nonetheless that it is a nonprofessional and that its personnel did not have the expertise to know what procedures were required or whether the particular procedures proposed by Law were adequate for its purposes. After all, Gibbes Inc. suggests, its lack of expertise was precisely the reason why it approached Law in the first place. In sum, Gibbes Inc. argues that, by failing to investigate adequately for the presence of rock-a task assertedly contemplated by the terms of the contract-Law breached its contract to perform a complete geotechnical exploration.
 
 
 10
 Needless to say, Law disputes Gibbes Inc.'s version of the contract. According to Law, Gibbes Inc. retained Law to determine whether the land could support the buildings Gibbes Inc. proposed to place on it. Before its exploration, Gibbes Inc. did not tell Law that the elevation of the buildings would be significantly lower than the original elevation of the land. Thus, Law assumed that only cut and fill, and not excavation, would be required. This assumption was explicitly stated in Law's proposal and in its report. The report also contained the following advisory: "If the project information section in this report contains incorrect information or if additional information is available, you should convey the correct or additional information to us and retain us to review our recommendations." Law notes that, after receiving and presumably reviewing the report, Gibbes Inc. never informed Law of its incorrect assumption. Moreover, Law emphasizes that Gibbes Inc. conceded that Law performed all specific tasks set out in the proposal. Thus, concludes Law, it cannot be said to have breached the terms of the contract.
 
 
 11
 Gibbes Inc. responds to the suggestion it bore responsibility for correcting Law's erroneous assumption by again emphasizing its inexpertness. The report was highly technical and filled with substantial jargon, and Gibbes Inc. rejects Law's assertion that a non-expert is responsible for wading through the technical findings of a professional engineer to correct its errors.
 
 
 12
 Review of a grant of summary judgment is, of course, de novo. Higgins v. E.I. Du Pont de Nemours & Co., 863 F.2d 1162, 1167 (4th Cir. 1988). Summary judgment is appropriate only if"the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). We believe that there is a genuine issue of material fact as to whether the contract between Law and Gibbes Inc. required Law to explore for subsurface rock like that Gibbes Inc. encountered. As we have just noted, the parties' versions of the extent of the exploration called for by the contract differ markedly, and each version finds substantial support in the language of the contract. Resolving disputes such as this one is precisely the function of the jury, and in these circumstances, therefore, summary judgment is inappropriate.
 
 III.
 
 13
 We turn next to Gibbes Inc.'s claims of professional negligence and breach of express warranty, which simply incorporated the professional standard of care. Gibbes Inc. clearly has adequately alleged professional negligence. Its argument, in brief, is that as a professional Law should have known that the buildings would have to be located at an elevation lower than that of the land and therefore should have conducted a more extensive exploration for the presence of rock-or at least warned Gibbes Inc. that such an exploration was necessary.
 
 
 14
 To establish professional negligence under Georgia law,[1] Gibbes Inc. was required to offer competent expert testimony as to the standard of care applicable to an engineer performing a pre-construction geotechnical exploration. See H. Elton Thompson & Assoc., P.C. v. Williams, 298 S.E.2d 539, 540 (Ga. App. 1982); Covil v. Robert & Co. Assocs., 144 S.E.2d 450, 453-54 (Ga. App. 1965). To satisfy this requirement, Gibbes Inc. offered the testimony of George Bailey, who was deposed by Law. Based on his deposition testimony, the district court concluded that Bailey was not qualified under Rule 702 of the Federal Rules of Evidence[2] to give expert testimony as to the relevant standard of care. For this reason alone, the court granted summary judgment for Law on the professional negligence and express warranty claims.
 
 
 15
 The ultimate touchstone of Rule 702 is whether the testimony of the expert will prove helpful to the jury, Friendship Heights Assocs. v. Vlastimil Koubek, A.I.A., 785 F.2d 1154, 1159 (4th Cir. 1986), and " 'doubts about whether an expert's testimony will be useful should generally be resolved in favor of admissibility.' " Larabee v. M M & L Int'l Corp., 896 F.2d 1112, 1116 n.6 (8th Cir. 1990) (quoting J. Weinstein & M. Berger, Weinstein's Evidence p 702, at 702-30 (1988)). The district court's decision that Bailey was not qualified under Rule 702 seems premised on two concerns: first, that at his deposition Bailey "could not articulate the standard of care for engineers' performance"; and, second, that "Bailey's engineering experience, although lengthy, is not sufficiently related to pre-construction geotechnical investigation to render him qualified to give expert opinions." We shall address those concerns in turn.
 
 
 16
 First, we believe that it is premature to conclude that Bailey was unable to articulate the relevant standard of care. Rather, on our reading of his deposition testimony, Bailey was simply confused as to what counsel for Law meant by the phrase "standard of care." Upon repeatedly being asked to describe an engineer's standard of care, Bailey responded, inter alia, "[b]e more specific. What are you talking about?"; "[i]s that a legal term?"; and "what does that mean?" Counsel for Law never clarified what he meant by the phrase "standard of care," and Law now seeks to use Bailey's inability to understand the phrase to exclude his testimony altogether. We think this unwarranted. Standard of care is a legal term of art that naturally might be unfamiliar to a non-lawyer such as Bailey. To avoid unnecessary confusion, counsel for Law simply could have asked Bailey to describe the "degree of care and skill as, under similar conditions and like surrounding circumstances, is ordinarily employed" by engineers conducting geotechnical explorations. H. Elton Thompson, 298 S.E.2d at 540. All indications are that, had the question been phrased in this way, Bailey would have answered it satisfactorily. In fact, Bailey explicitly stated that he "could go on all day about what a contractor should do ... to take care of his client properly." Such testimony is all that is required by Georgia law, and Bailey plainly was able to provide it.
 
 
 17
 Second, although Bailey lacks practical experience in the precise context about which he would have testified, this is not fatal under Rule 702. At his deposition, Bailey testified about his extensive engineering experience, including prior work with borings and soil investigation. In his more than forty years as a practicing engineer, he has worked on foundations and pile structures, the drilling of wells, several significant tunnel projects (including the construction of the tunnel system under the United States Capitol), and dam construction. Although not a specialist in geotechnical explorations, we think that Bailey was adequately qualified by "knowledge, skill, experience, training, or education" for his testimony to be helpful to the jury, and that questions about his testimony more properly go to its weight rather than to its admissibility.
 
 
 18
 Because we conclude that Gibbes Inc. offered competent expert testimony as to the relevant standard of care, summary judgment on the claims of professional negligence and breach of express warranty was improper.
 
 IV.
 
 19
 Finally, we turn to the contractual clauses limiting Law's liability to $50,000 and excluding implied warranties. Gibbes Inc. argues that the district court erred in enforcing these provisions. It notes that they appeared in small print on the reverse side of the proposal acceptance sheet, and it argues that the clauses should not be enforced because they "escape[d]" Gibbes Inc.'s attention.
 
 
 20
 We find the district court's analysis of these contentions convincing and agree that these clauses should be enforced. We also agree with the district court that the limitation of liability applies to all claims that have been advanced by Gibbes Inc. in this case.
 
 
 21
 Under Georgia law, clauses limiting or even altogether relieving a party from liability are valid and not against public policy. My Fair Lady of Georgia, Inc. v. Harris, 364 S.E.2d 580, 581 (Ga. App. 1987); see also Hall v. Gardens Servs., Inc., 332 S.E.2d 3, 5 (Ga. App. 1985) ("It is general contract law in Georgia that parties are free to contract about any subject matter, on any terms, unless prohibited by statute or public policy, and injury to the public interest clearly appears."). Likewise, disclaimers of implied warranties, particularly in a commercial context, are a common and legitimate method of allocating risk. See 2000 Watermark Ass'n v. Celotex Corp., 784 F.2d 1183, 1185-86 (4th Cir. 1986). It is irrelevant that Gibbes Inc.'s officers failed to notice the clauses at issue here:"Parties to a contract are presumed to have read their provisions and to have understood the contents. One who can read, must read, for he is bound by his contracts." My Fair Lady, 364 S.E.2d at 581 (citations omitted). Moreover, we believe that the existence of these provisions was adequately called to the attention of Gibbes Inc.: Directly above the line on which LeConte Gibbes signed for Gibbes Inc., the proposal acceptance sheet states: "The Terms and Conditions of this Proposal, including the Terms on this page and the attached General Conditions, are: Accepted...." See Coastal Iron Works, Inc. v. Petty Ray Geophysical, Div. of Geosource, Inc., 783 F.2d 577, 582 (5th Cir. 1986).
 
 
 22
 Gibbes Inc.'s ultimate argument is that we should set aside these general rules and conclude that these provisions are against public policy simply because Law is a professional. We find this contention unconvincing. According to Georgia law:
 
 
 23
 A contract cannot be said to be contrary to public policy unless the General Assembly has declared it to be so, or unless the consideration of the contract is entered into for the purpose of effecting an illegal or immoral agreement or doing something which is in violation of law.
 
 
 24
 Hall, 332 S.E.2d at 5. Gibbes Inc. has identified no Georgia statute that prohibits engineers from limiting their liability or disclaiming implied warranties.[3]
 
 
 25
 Moreover, although Gibbes Inc.'s lay status might impair its ability to understand the technical report that Law prepared, that status has nothing whatever to do with its ability to read and understand the contractual provisions at issue here. Gibbes Inc. is an automobile dealership, a " 'commercially sophisticated business[ ],' " and "it would strain 'credulity to hold that a business like [Gibbes Inc.] was not, or should not have been, aware of the language disclaiming implied warranties' " and limiting its contracting partner's liability. South Carolina Elec. & Gas Co. v. Combustion Eng'g, Inc., 322 S.E.2d 453, 457 (S.C. App. 1984) (quoting AMF Inc. v. Computer Automation, Inc., 573 F. Supp. 924, 930 (S.D. Ohio 1983)).
 
 
 26
 Under Georgia law, a court is "bound to exercise extreme caution in declaring a contract void as against public policy, and should do so only when the case is free from doubt and an injury to the public interest clearly appears." Piedmont Arbors Condominium Ass'n v. BPI Constr. Co., 397 S.E.2d 611, 612 (Ga. App. 1990). Here Gibbes Inc. has offered no adequate reason why the limitation on liability and disclaimer of implied warranties violate the public policy of Georgia, and they are therefore enforceable.
 
 V.
 
 27
 In sum, we believe that there is no question but that the clauses limiting Law's liability and disclaiming implied warranties are enforceable. We do conclude, however, that Gibbes Inc. does raise disputed issues as to the nature of the exploration Law contracted to perform and as to whether Law negligently failed to discover the subsurface rock that later caused Gibbes Inc. substantial difficulties.
 
 
 28
 Accordingly, the judgment of the district court is affirmed in part and reversed in part, and the case is remanded for further proceedings.
 
 
 29
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED
 
 
 
 [1]
 South Carolina courts-whose choice-of-law rules govern, Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487 (1941)-generally honor contractual choice-of-law clauses, see Associated Spring Corp. v. Roy F. Wilson & Avnet, Inc., 410 F. Supp. 967, 975 (D.S.C. 1976); Standard Register Co. v. Kerrigan, 119 S.E.2d 533, 536 (S.C. 1961), at least when such a clause does not violate South Carolina public policy, cf. Barnes Group, Inc. v. C & C Products, Inc., 716 F.2d 1023, 1029 (4th Cir. 1983). Because we find no violation of public policy here, we enforce the contract's choice-of-law clause and apply the law of Georgia
 
 
 [2]
 Rule 702 provides in full:
 If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.
 Fed. R. Evid. 702.
 
 
 [3]
 Emory Univ. v. Porubiansky, 282 S.E.2d 903 (Ga. 1981), on which Gibbes Inc. relies, is readily distinguishable. See Barton v. Peterson, 733 F. Supp. 1482, 1488-89 (N.D. Ga. 1990)