**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

POTTER-SHACKELFORD CONSTRUCTION
COMPANY, INCORPORATED,
Plaintiff-Appellee,

                                                                No. 96-1073

v.

LAW ENGINEERING, INCORPORATED,
Defendant-Appellant.

POTTER-SHACKELFORD CONSTRUCTION
COMPANY, INCORPORATED,
Plaintiff-Appellant,

                                                                 No. 96-1112

v.

LAW ENGINEERING, INCORPORATED,
Defendant-Appellee.

Appeals from the United States District Court
for the District of South Carolina, at Greenville.
Henry M. Herlong, Jr., District Judge.
(CA-95-116-6-20)

Argued: October 29, 1996

Decided: December 23, 1996

Before MURNAGHAN and MICHAEL, Circuit Judges, and
DOUMAR, Senior United States District Judge for the Eastern
District of Virginia, sitting by designation.

_____

Remanded in part and affirmed in part by unpublished per curiam
opinion.

**COUNSEL**

**ARGUED:** Robert O'Neal Fleming, Jr., SMITH & FLEMING, Atlanta, Georgia, for Appellant. Thomas H. Coker, Jr., HAYNS-WORTH, MARION, MCKAY & GUERARD, L.L.P., Greenville, South Carolina, for Appellee. **ON BRIEF:** Boyd B. Nicholson, Jr., Cynthia Buck Brown, HAYNSWORTH, MARION, MCKAY & GUERARD, L.L.P., Greenville, South Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Potter-Shackelford Construction Co., Inc. ("Potter-Shackelford"), sued Law Engineering, Inc. ("Law") for breach of contract, negligence, professional negligence and negligent misrepresentation. The basis of Potter-Shackelford's claim was Law's alleged failure to provide adequate recommendations regarding the suitability of a concrete floor slab on a building, with which Potter-Shackelford was involved. Punitive damages also were sought. At the close of evidence Law made a motion for judgment as a matter of law as to punitive damages. The district court granted that motion. Thereafter, the jury returned a compensatory verdict in favor of Potter-Shackelford for $126,552.73. The district court denied Law's post-trial motion for judgment notwithstanding the verdict holding that the liability of limitation clause contained in the contract executed by the parties, which limited Law's liability to $50,000, did not apply to the claims raised by Potter-Shackelford against Law. Both Potter-Shackelford and Law have appealed.

2

I.

FACTS AND PROCEDURAL HISTORY

In 1988, Hart Corporation ("Hart"), a real estate development company, awarded Potter-Shackelford, a commercial general contractor, a contract to build a "shell" building for speculative sale. The inside of the building, to include a floor slab, was left unfinished in order to allow a potential buyer flexibility in using the building. Hart hired Law, an engineering company providing soils and construction material testing and related engineering services, to provide geotechnical engineering services in connection with the project. Before Potter-Shackelford did any work on the site, Law examined the existing site in order to make recommendations to Hart regarding, among other things, the type of soil fill material to be placed in the building's subgrade. Law made recommendations regarding the physical characteristics of the fill material, specifically including recommendations concerning the "liquid limits" of the soil fill and its maximum "plasticity index."[1] Law recommended a maximum plasticity index of 15 for fill materials within the shell building.

In 1991, Hamilton Standard Company ("Hamilton"), a distributor based in Connecticut, purchased the shell building. Hamilton requested that Potter-Shackelford and other contractors submit bids to upfit the building to suit Hamilton's specific needs. These upfits included the construction of a concrete floor slab, offices, and other facilities. After receipt of the bids, Hamilton asked Potter-Shackelford to revise its proposal to provide assurances that the subgrade would properly support a concrete floor slab. Potter-Shackelford agreed to Hamilton's proposal, but conditioned its acceptance on Hamilton's agreeing to pay extra for the removal of unsuitable material found in the subgrade. Hamilton agreed to do so.

_____

[1] Soils with a high plasticity index have a high potential for swelling and also have inherent in them the opposite problem of shrinking when moisture is lost. The plasticity index tells engineers the potential the soil has for swelling when the soil becomes wet. Soil materials with high plasticity indexes are generally undesirable for construction and are normally removed because the swelling of the soil causes the floor slab to be raised in areas above the swelling soil.

3

After reaching its agreement with Hamilton, Potter-Shackelford contacted Law to provide engineering services in connection with the construction of a concrete floor slab in the building. On January 2, 1992, Art Baiden of Potter-Shackelford spoke with Michael Parker, an engineer with Law. Baiden and Parker agreed to meet at the building site on January 7, 1992. No work order was executed before the meeting.

At the site, Baiden, bearing in mind Hamilton's obligation to pay for unsuitable material found in the subgrade, asked Parker what needed to be done to make the existing subgrade suitable to support the proposed concrete floor slab. At that time, Parker recommended that the subgrade be reconditioned by evacuating the upper one to two feet of soil, adding moisture, and then replacing and compacting the soil. Parker also recommended that plateload testing be performed in three areas, to make sure that the reconditioned soil would have adequate strength to support the proposed concrete floor slab. Parker did not recommend any further testing of the soil, nor did he discuss with Baiden the existence of plastic soils within the subgrade.[2] Based on Parker's recommendation, Baiden authorized Law to perform the plateload testing.

After the meeting, Parker returned to his office and prepared a written proposal, under which Law would conduct field density testing during preparation of test areas, to conduct plateload tests, and to report the results. The proposal clearly related to two parts of a single

---

[2] In October 1991, Parker prepared a report for David Rogers, a Law customer, concerning the condition of the subgrade of the building. Law's October 1991 report indicated that soil borings taken by Law had a plasticity index of 53. The report also stated that the presence of plastic soils "compromises the ability of the subgrade to provide proper support. . . ." On December 20, 1991, Law prepared another report, in which Law recommended that the soils used in compacted fills have a plasticity index less than 15, and that the subgrade in its present condition did not appear feasible to support a floor slab. Parker did not prepare the second report, but was aware of the report. Parker had copies of both reports when he met with Baiden, but did not discuss the reports with Baiden. These reports, and Parker's failure to mention them to Baiden form the basis for Potter-Shackelford's punitive damages claim to be discussed in more detail hereafter.

4

obligation recommendation and the work authorization for accomplishing it. Law's proposal was printed on a form titled "Work Authorization Sheet." That form stated: "The purpose of this sheet is to obtain your authorization for the work verbally requested and confirm the terms under which these services are provided as shown below and on back." On the back of the form are Law's standard "Term and Conditions," including the following provision:

> PROFESSIONAL LIABILITY. Client agrees that Law Engineering's liability to Client or any third party due to any negligent professional acts, errors or omissions or breach of contract will be limited to an aggregate of $50,000 or our total fee, which ever is greater. If Client prefers to have higher limits of professional liability, we agree to increase the limit to a maximum of $1,000,000 upon Client's written request at the time of accepting our proposal, providing that Client agrees to pay an additional consideration of ten percent of our total fee, or $500, whichever is greater. The additional charge for the higher liability limit is because of the greater risk assumed by us and is not a charge for additional professional liability insurance.

After completion of the plateload testing,[3] in February 1992, Law sent Potter-Shackelford a written report detailing the tests and making recommendations based on the test results. The report made references to the October 1991 and December 1991 reports, but made no mention of the problems respecting the high plasticity index values of the soil present in the subgrade. Prior to receiving the February 1992 report, Potter-Shackelford recompacted the subgrade and began pouring the concrete slab floor over the original subgrade soil. By March, 1992, the concrete floor had been completed. Thereafter, a portion of the concrete floor, began to buckle and shift, causing the owner (Hamilton) to become aware of the building problems. After investi-

_____

[3] Potter-Shackelford contends that Law performed the plateload testing and verbally reported the results of the testing before Baiden signed the Work Authorization Form. Baiden signed the form on January 16, 1992. Law's performance of the work before Baiden signed the form does not appear to be material to the controversy at hand.

gations by several engineers,[4] Potter-Shackelford and Hamilton concluded that the high plastic soils in the subgrade were responsible for the problems with the concrete floor slab. Potter-Shackelford then removed and replaced approximately 8,500 square feet of the concrete floor slab.

Potter-Shackelford sued Law for breach of contract, negligence, professional negligence and negligent misrepresentation in the Court of Common Pleas, in Greenville, South Carolina. Law removed the case to the United States District Court for the District of South Carolina based on diversity of citizenship. Law moved for partial summary judgment limiting its liability to $50,000, in accordance with the limitation of liability clause contained in the work authorization form. Finding a genuine issue of material fact existed as to whether the limitation of liability applied, on August 21, 1995, the district court denied the motion.

On November 29, 1995, the district court granted Law's motion for judgment as a matter of law as to punitive damages. At the close of Potter-Shackelford's case, and again at the close of all the evidence, Law sought judgment as a matter of law enforcing the limitation of liability clause. The district court denied both motions. On November 30, 1995, the jury awarded Potter-Shackelford damages in the amount of $126,552.73. On December 12, 1995, the district court denied Law's post-trial motion for judgment as a matter of law with respect to the liability limitation clause contained in the work authorization form. Law filed its notice of appeal on January 10, 1996, and Potter-Shackelford filed its notice of cross-appeal on January 22, 1996.

_____

[4] Law also examined the concrete floor and expressed its belief that curling may have been responsible for the floor's problems. Curling occurs when the top of the concrete slab dries faster than its bottom. In January, 1994, after performing additional tests on the subgrade, Law issued a report concluding that expansive soils were not causing the slab's problems because "no evidence [exists] that the overall moisture content of the subgrade . . . changed significantly." Law's 1994 report made reference to its October, 1991 and December, 1991 reports. Law's report also recommended a desired plasticity index of 30.

II.

DISCUSSION

On appeal we must center on whether a limitation of liability provision on the back of Law's Work Authorization Form, which was signed by Potter-Shackelford's representative is legal and applies. As the issue raised is one of contract construction, the district court's decision is subject to plenary review by the court. Bailey v. Blue Cross & Blue Shield of Virginia, 67 F.3d 53, 54 (4th Cir. 1995), cert. denied, 116 S.Ct. 1043 (1996). Preliminarily, the parties disagree on what state law controls in the instant appeal.

A. Choice of Law

The aforementioned limitation of liability provision provides that the agreement shall be governed by the laws of the State of Georgia. As Law notes, South Carolina courts have long respected the consistently enforced contractual choice of law provisions, except where the stipulated law directly conflicts with South Carolina public policy. Associated Spring Corp. v. Roy F. Wilson Avent, Inc. , 410 F.Supp. 967, 975 (D.S.C. 1976). Furthermore, Law argues that application of Georgia law relating to exculpatory clauses does not violate South Carolina public policy.[5]

The limitation of liability clause here is legal, and hence, Georgia law will control. In any event, as Potter-Shackelford has candidly admitted, Georgia's law respecting limitation of liability is no different from that of South Carolina. Potter-Shackelford's Brief, at p. 17 n. 11.

_____

[5] Law cites to two unpublished decisions from the Fourth Circuit to support its proposition, Georgetown Steel Corp. v. Law Engineering Testing Co., 7 F.3d 223 (Table), 1993 WL 358770 (4th Cir. Sept. 14, 1993), and Gibbes, Inc. v. Law Engineering, Inc., 960 F.2d 146 (Table), 1992 WL 78830 (4th Cir. Apr. 20, 1992). While the decisions are not precedent, we find their holdings persuasive. Potter-Shackelford agrees that they reiterate the general rule that exculpatory clauses like the one involved in the present case are not void as a matter of public policy.

7

Under Georgia Law, contractual limitation of liability provisions are valid and enforceable:

> It is the paramount public policy of this state that courts will not lightly interfere with the freedom of parties to contract. A contracting party may waive or renounce that which the law has established in his or her favor, when it does not thereby injure others or affect the public interest. Exculpatory clauses in Georgia are valid and binding, and are not void as against public policy when a business relieves itself from its own negligence. Parties to the contract are presumed to have read their provisions and to have understood the contents. One who can read, must read, for he is bound by his contracts.

My Fair Lady of Georgia, Inc. v. Harris, 364 S.E.2d 580, 581 (Ga. App. 1987).

B. The Applicable Limitation of Liability Provision

In a nutshell, Potter-Shackelford argues that the limitation of liability provision is limited to the performance of plateload tests, not to Law's recommendations with respect to plateload tests, i.e., performance vs. advice to perform. Potter-Shackelford expresses no dissatisfaction with the actual plateload testing performed by Law. Rather, Potter-Shackelford argues that Law's recommendation of plateload testing at the January 7 meeting was faulty, especially in light of Law's prior experience with the concrete slab. Law was paid for that recommendation and no limitation of liability form was executed for that work, Potter-Shackelford contends.

Furthermore, Potter-Shackelford argues that "the most important evidence on the issue is the authorization form itself." Potter-Shackelford claims that the authorization form speaks only to Law's performing and reporting of plateload tests. The form, Potter-Shackelford contends, makes no mention of providing any consultation services.[6]

_____

[6] In addition, Potter-Shackelford argues that another authorization form provided by Law to another client specifically mentions examining the

8

On the other hand, Law argues what Potter-Shackelford wanted from Law was its engineering judgment necessary to determine what needed to be done to the subgrade. Law argues that Law's recommendation of plateload testing, and the subsequent implementation of that recommendation, are complementary parts of a single transaction.**7** Law maintains that the gravamen of Potter-Shackelford's complaint is that Law's recommendation of plateload testing instead of other kinds of testing which would have revealed the existence of plastic soils in the subgrade, amounted to the result of the plateload testing which Law represented would make the subgrade soils suitable to support the concrete floor slab. Law responds there was one continuous activity by it or two closely linked activities acting together. Parker prepared a written proposal embodying Law's recommended course of action and sent that proposal to Potter-Shackelford. The

_____

subgrade conditions and rendering an opinion "on the suitability of the soil subgrade to receive a concrete floor slab on grade." Notwithstanding the irrelevance of another authorization form addressed to another client, not involved with the present lawsuit, even if that other form was otherwise relevant, the language included in that form bears no relevance to the language in the present form. Undeniably, Law did not include similar language in the form Law provided to Potter-Shackelford. The lack of that language, however, does not demonstrate in any way that the recommendations provided by Parker were not a part of the contract executed by the parties. Law was approached by Potter-Shackelford to solve a problem not to break it into two or more pieces. At best, the absence of the language represents an oversight by Parker, or sloppy work, or else perhaps avoidance of needless redundancy.

**7** It is as though in baseball one hits a home run. That means a single hit not four hits (a single, a double, a triple, and a four baser). Or a double play where the ball passes from pitcher to batter, to shortstop, to second baseman to first baseman is overall a single event though involving different though complementary acts by five different players. In other words, we are dealing with an A1 and A2 which coalesced into a composite A. Even if we had a situation where two distinct items merged (A + B = a successor A), which neither of the parties nor the district judge has addressed, we might well end up with the same conclusion. DeLong v. Cobb, 111 S.E.2d 89, 93 (Ga. 1959) ("[Y]et it is a well-settled principle of law . . . that all pertinent representations and negotiations prior to the preparation and execution of a written contract are merged therein."), overruled sub nom. on other grounds, Long v. Walls, 177 S.E.2d 373 (Ga. 1970).

9

proposal was signed and accepted by Potter-Shackelford and became the contract between the parties. Included within that contract, Law argues, is the limitation of liability clause.

In an oral ruling, the district court denied Law's motion for judgment as a matter of law at the close of all the evidence on the grounds that the limitation of liability provision "pertains purely to a separate specific contract concerning plateload testing, which is not even claimed in this case as far as the contract action by the plaintiff against the defendant."[8]

In our view the ruling of the district court should be amended to take account of the limitation of liability. Law correctly states that contract language is to be evaluated in light of surrounding circumstances to ascertain the intention of the parties. Paul v. Paul, 219 S.E.2d 736 (Ga. 1975). Prior to constructing the concrete floor slab, Potter-Shackelford turned to Law for its advice on the suitability of the subgrade to support a concrete floor slab. After the January 7 meeting between Baiden from Potter-Shackelford and Parker from Law, Parker prepared a written proposal in which Law was to provide an engineer technician to conduct field density testing; conduct three plateload tests; and report the results of those tests. On the back of the proposal, the limitation of liability clause appears, as well as the choice of law provisions.

It is a situation designed to lead to performance if feasible and continuing to be performed when determined to be feasible. Potter-Shackelford's argument seems merely an attempt to salvage its jury verdict through resort to an unrealistic approach to the parties' agreement. After Law completed its work, Law sent Potter-Shackelford a single invoice in the amount of $3,582.28, which included a charge of $225 for Parker's time on January 7. That indicated a belief by Law that a single contract covering both the recommendation of plateload testing and the implementation of the recommendation was

_____

[8] In an earlier written ruling on Law's motion for partial summary judgment on the limitation of liability provision, the district court denied that motion on the grounds that "[a]t the very least, a genuine issue of material fact exists as to whether the limitation of liability applies."

10

in existence. Agreement as to such an interpretation by Potter-Shackelford is demonstrated by its payment without objection of the entire bill without asking for a separation into distinct activities.

Potter-Shackelford stresses that no work authorization form was completed with respect to the January 7 meeting, however, the lack of a work authorization form weighs against Potter-Shackelford. The fact that no separate work authorization form exists, or was created, for the January 7 meeting suggests that Parker's January 7 meeting, and his recommendations are a part and parcel of the proposal Parker sent to Potter-Shackelford. Parker's recommendations were followed on without interruption by the plateload testing itself. Potter-Shackelford's argument that only the actual plateload testing--and not the plateload recommendation itself--is covered by the limitation of liability clause ignores the circumstances under which the plateload testing was done in the first place.

Moreover, Baiden testified that he met with "Parker at the job site to get his opinion as a geotechnical engineer as to what we needed to do with the [soil] subgrade to make it suitable to accept the [concrete] floor slab." Potter-Shackelford does not dispute that Parker recommended plateload testing and Potter-Shackelford promptly accepted the recommendation. Law argues persuasively that a single operation needed to be done which included both the recommendation of plateload testing, as well as the performance of that testing and the reporting of the results.

The surrounding circumstances related to the formation and interpretation of the contract include the fact that the parties acted to send and pay only one invoice for the plateload testing work, including the recommendation that the testing be done and the fact that Potter-Shackelford engaged Law's expertise to determine how to make the subgrade suitable for the concrete floor slab. They amply demonstrate that the recommendation of plateload testing was part of a single contract entered into between the parties, and hence, the limitation of liability provision should apply.

C. Punitive Damages

In its cross-appeal, Potter-Shackelford appeals the district court's grant of Law's motion for judgment as a matter of law as to punitive

11

damages. Potter-Shackelford contends that the district court erred in ruling as a matter of law on the punitive damages issue because the record provided substantial evidence that Law withheld crucial information from Potter-Shackelford.

The district court apparently passed over the matter whether breach of contract would support punitive damages, Floyd v. County Square Mobile Homes, Inc., 336 S.E.2d 502 (S.C. Ct. App. 1985); Vann v. Nationwide Ins. Co., 185 S.E.2d 363 (S.C. 1971), ruling that insufficient evidence existed to create a jury question on the punitive damages issue. Potter-Shackelford argues that the standard of review should be de novo, and we do not disagree. Benedi v. McNeil-PPC, Inc., 66 F.3d 1378 (4th Cir. 1995).

In diversity cases federal law governs whether an issue is to be determined by the court or the jury. Johnson v. Hugo's Skateway, 974 F.2d 1408, 1416 (4th Cir. 1992) (en banc). Under federal law, the grant of judgment as a matter of law is appropriate only when the evidence, viewed in a light most favorable to the non-moving party, would support only one reasonable verdict. See Williams v. Cerberonics, Inc., 871 F.2d 452, 458 (4th Cir. 1989). The same standard is applied by the Fourth Circuit in reviewing a district court's granting judgment as a matter of law. Nehi Bottling Co. v. All American Bottling Co., 8 F.3d 157, 162 (4th Cir. 1993). In determining whether judgment as a matter of law is appropriate regarding punitive damages, however, a federal court in diversity must apply state substantive law. Defender Industries, Inc. v. Northwestern Mutual Life Insurance Co., 938 F.2d 502, 504-05 (4th Cir. 1991) (en banc). Under South Carolina law, punitive damages are appropriate where the conduct of the defendant was willful, wanton or reckless. Barber v. Whirlpool Corp., 34 F.3d 1268 (4th Cir. 1994). A demonstration of "conscious wrongdoing" must be made by the plaintiff to justify an award. Id. at 1278.

Potter-Shackelford argues that sufficient evidence existed to submit the punitive damages issue to the jury. As support for its position, Potter-Shackelford notes that at the time Parker met with Baiden, Law, through its representative Parker, knew, and had reported in the past, that the project's subgrade contained expansive, plastic soils which rendered the subgrade unsuitable for a concrete floor slab. Law

12

failed to inform Potter-Shackelford of those facts. Potter-Shackelford argues that "[t]he fact that Law withheld information concerning plastic soils, standing alone, created an issue of fact for the jury to determine whether Parker, as a professional engineer, had willfully or recklessly withheld information from Potter-Shackelford."

Furthermore, Potter-Shackelford contends that Law continued to withhold the information about the plastic soils, even after the problems with the subgrade became manifest. In addition, according to Potter-Shackelford, Law took an affirmative step further to mislead Potter-Shackelford concerning the subgrade, by noting in its 1994 report, that the maximum plasticity index value for the project site should be 30. The 30 figure was double the index value given in Law's three prior reports in 1988, October 1991, and December 1991.

Potter-Shackelford argues that a jury could have reasonably concluded that Law withheld information about the plastic soils in order to hide the fact that Law performed faulty work on the project in 1988. Potter-Shackelford notes that in 1988, Law monitored the soil fill placement for Hart, the owner of the site at the time. In 1988, as well as 1991, Law recommended a maximum plasticity index of 15. Based on the soil tests performed in 1993 and 1994 showing plasticity index values ranging from 21 to 74, the jury could have reasonably inferred that Law failed properly to monitor fill placement in 1988, and that upon realizing this failure, worked to withhold the information.

In response, Law argues the evidence viewed in a light most favorable to Potter-Shackelford permits only one reasonable conclusion: Law's failure adequately to apprise Potter-Shackelford about plastic soils in the subgrade resulted from miscommunication and misunderstanding, not willful misconduct. Law claims that when Parker met with Baiden from Potter-Shackelford, Parker believed that Baiden had read both the October 1991 and December 1991 reports because Baiden knew of the existence of the reports. Therefore Parker thought Baiden was aware of the plastic soils in the subgrade.[9]

_____

[9] Law relies on Parker's notes recorded contemporaneously with the telephone conversation on January 2 between Parker and Baiden setting up the January 7 meeting. The notes, unrebutted, state that "[h]e [Baiden] does not have either report but obtained Oct copy from Steven Turner . . . ." Law's Reply Brief, at 8. The notes also state that "he [Baiden] needs to read both reports so he can determine what to do." Id.

13

Moreover, Law contends that Law did not provide copies of the October 1991 and December 1991 reports to Potter-Shackelford after the concrete floor slab began manifesting problems because of Law's standard policy that any report Law prepares is the property of the client, and cannot be provided to a third party without the client's permission. As for Potter-Shackelford's argument that Law failed reasonably to monitor fill placement in 1988 and upon realizing that failure, worked to withhold the information, Law contends that Law was not hired to monitor the plasticity of fill soils during the 1988 construction.

The district court correctly granted Law's motion for judgment as a matter of law on the punitive damages issue. While Law was probably negligent in not making sure that Baiden had read the October 1991 and December 1991 reports, Potter-Shackelford has not offered any evidence from which a reasonable jury could conclude that Law's conduct rose to the level of willfulness or "conscious wrongdoing." The district court should, therefore, as to punitive damages, be affirmed.

Accordingly, the recovery judgment should be remanded to be covered by the limitation of liability at $50,000 and the denial of punitive damages should be affirmed.

REMANDED IN PART AND AFFIRMED IN PART

14